```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
                                              GOVERNMENT'S APPLICATION
UNITED STATES OF AMERICA,         :           FOR APPOINTMENT
                                              OF RECEIVER
       -v.-                       :
                                              05 Cr. 1036 (CM)
DANIEL E. MARINO,                 :

              Defendant.          :

-----------------------------------x

UNITED STATES OF AMERICA,         :

       -v.-                       :           05 Cr. 1039 (CM)

SAMUEL ISRAEL III,                :

              Defendant.          :

-----------------------------------x
```

The United States of America respectfully moves the
Court for an Order appointing Kroll as Receiver to assist the
United States Marshals Service ("USMS") in effecting the
liquidation of the property forfeited in the above-captioned
cases.

## BACKGROUND

1.    On September 29, 2005, the United States filed
Informations 05 Cr. 1039 (CM) and 05 Cr. 1036 (CM) charging
Samuel Israel III and Daniel E. Marino, respectively, with
defrauding Bayou investors of more than $450 million.  The same
day, each of the defendants pleaded guilty.

2.    According to the Informations, from in or about
July 1996 through in or about August 2005, Israel, Bayou's Chief

Executive Officer and Chief Investment Officer, and Marino, the Chief Financial Officer and Chief Operating Officer, conspired to fraudulently induce investors to contribute in excess of $450 million to the Bayou hedge funds. The funds collapsed in August 2005 after Marino and Israel attempted to recoup the mounting losses by investing Bayou funds in private placement transactions, in the United States and abroad, which turned out to be frauds.

3.    The Informations filed against Israel and Marino seek forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, of the defendants' interest in all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the fraud. The Informations seek a money judgment to be imposed jointly and severally against the defendants in the amount of $450 million, as well as specific property alleged to be proceeds of the fraud or property traceable thereto.

4.    It is the intention of the United States Attorney's Office for the Southern District of New York (the "Office") to request that property forfeited in the criminal cases against Marino and Israel be distributed *pro rata* to victims of the offenses described herein, pursuant to 21 U.S.C. § 853(i)(1) and 28 C.F.R. Part 9.

2

5.    Based upon Israel's plea agreement and guilty plea, on October 20, 2005, the Court entered a Preliminary Order of Forfeiture as to Israel, final as to the defendant, pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461 and Fed. R. Crim. P. 32.2(b)(1).  The Order forfeited all right, title and interest of the defendant in specific property which constitutes proceeds traceable to the said offenses, and property traceable to such property.

6.    Based upon Marino's plea agreement and guilty plea, on October 19, 2005, the Court entered a Preliminary Order of Forfeiture, final as to the defendant, pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461 and Fed. R. Crim. P. 32.2(b)(1). The Court found Marino jointly and severally liable for a personal money judgment in the amount of $450 million, including all right, title and interest of the defendant in specific property which constitutes proceeds traceable to the said offenses, and property traceable to such property.

7.    The Preliminary Orders of Forfeiture as to Marino and Israel (the "Preliminary Orders") authorized the USMS to take possession of certain forfeited property and to hold it in its secure custody and control.  The property subject to the Preliminary Orders includes "[a]ll right, title and interest of the defendants in any entities or partnerships, including but not limited to, IM Partners and IMG LLC, and any and all assets,

3

including bank accounts, held by or for the benefit of the
defendant[s]" (the "Forfeited Property").

8. Because the Forfeited Property includes entities
and/or partnerships and the various assets they may hold,
including investments in a number of private placements, the USMS
has requested the assistance of a receiver experienced in
managing and liquidating these types of assets. With the help of
a receiver, the USMS will be able to expeditiously and
effectively execute the Preliminary Orders and maximize the
potential value of the assets, for the benefit of victims who may
file petitions for remission or mitigation following the
conclusion of the forfeiture proceedings.

9. The Office, in close consultation with the
personnel at the USMS who are charged with executing the
Preliminary Orders, considered a number of candidates for such a
receivership and chose two qualified candidates for interview.
Following those interviews on December 15, 2005, Kroll Inc.
("Kroll") was chosen as the most qualified and cost-effective
option.

10. As summarized more fully in Exhibit A hereto,
Kroll has extensive experience in conducting large-scale
liquidations, receiverships and restructurings. Kroll also has
significant corporate finance experience selling operating
divisions and assets of companies that it has managed in crisis

situations, including divestitures and liquidations of various types of assets. James P. Shinehouse, Global Practice Leader of Kroll's Financial Advisory Services group, who would be principally responsible for the assignment, has over 15 years of experience in complex corporate restructurings and workouts for clients in receivership or administration.

11. The appointment of Kroll would have a tangible economic advantage in this case because, in or about September 2005, Kroll was appointed as liquidator of several offshore funds managed by Bayou Management LLC, and thus has already expended significant time and resources on the Bayou fraud. Kroll has reached a fee agreement with the USMS, which would contract with and compensate Kroll for its services.

12. The receiver would work at and under the direction of the USMS, which is charged with executing the Preliminary Orders. The receiver's assistance would be of significant benefit in effecting the efficient and effective disposition of the Forfeited Property, including the liquidation of assets; the transfer of stock; the stay of civil litigation affecting Forfeited Property; and the collection of loans and purported loans. The USMS personnel working on executing the Preliminary Orders are confident that they could work closely and well with Kroll in discharging their mission. In addition, Kroll has agreed to a substantial reduction of its ordinary rates.

THE COURT'S AUTHORITY
TO ENTER THE PROPOSED ORDER

13.  Title 21, United States Code, Section 853(g)

authorizes the Court to take appropriate action to preserve

property subject to a forfeiture order.[1]  In enacting Section

853(g), Congress conferred "broad power" upon the Court to take

necessary action to protect the Government's interest in property

ordered forfeited. *United States v. Stazola*, 893 F.2d 34, 39 (3d

Cir. 1990)[2]; *accord United States v. Real Property and Premises*

---

[1]  Section 853(g) provides:

Upon entry of an order of forfeiture under this
section, the court shall authorize the Attorney General
to seize all property ordered forfeited upon such terms
and conditions as the court shall deem proper.
Following entry of an order declaring the property
forfeited, the court may, upon application of the
United States, enter such appropriate restraining
orders or injunctions, require the execution of
satisfactory performance bonds, appoint receivers,
conservators, appraisers, accountants, or trustees, or
take any other action to protect the interest of the
United States in the property ordered forfeited. Any
income accruing to or derived from property ordered
forfeited under this section may be used to offset
ordinary and necessary expenses to the property which
are required by law, or which are necessary to protect
the interests of the United States or third parties.

[2]  In *Stazola*, the Government obtained a Preliminary Order
of Forfeiture as to the defendant's interest in an apartment
building where tenants were living under a month-to-month oral
lease.  After the USMS found the building uninhabitable, it
issued a notice demanding the tenants evacuate within ten days.
The tenants then filed a petition pursuant to 21 U.S.C. § 853(n)
claiming a possessory interest in the premises.  893 F.2d at 36.

After a hearing on the merits of the tenants's petition
and the Government's application for an eviction order under

6

*Known As 63-39 Trimble Road, Woodside, New York*, 860 F. Supp. 72, 75-76 (E.D.N.Y. 1994); *see also United States v. Stewart*, 1999 WL 551891 (E.D. Pa. 1999).³ Pursuant to Section 853(g), district courts have appointed trustees, evicted tenants and set aside fraudulent transfers. The broad powers conveyed by Section 853(g) have also been held to authorize a district court to set aside a fraudulent transfer designed to defraud the Government out of an interest in property it had obtained through a Preliminary Order of Forfeiture. *See United States v. Johnston*, 13 F. Supp.2d 1316 (M.D. Fla. 1998).⁴

---

Section 853(g), the district court dismissed the petitions and authorized the USMS to evict the tenants from the building. *Id.* at 36-37. The Court of Appeals upheld the eviction order, holding that "the district court acted within its power under § 853(g) in issuing the eviction order." *Id.* at 40.

³    In *Stewart*, following the defendant's RICO conviction, the court entered a preliminary order of forfeiture as to his stock in a company, Conestoga. Pursuant to Section 853(g), the court appointed a trustee to act on the court's behalf "to maintain, preserve, and protect the interest of the United States and/or third party claimants and other interested persons in the property and to market it for sale and to operate, manage, preserve, protect and carry on the day-to-day operations of Conestoga." 1999 WL 551891 at *1.

⁴    In *Johnston*, following entry of a Preliminary Order forfeiting a defendant's 25% interest in a partnership, the owners of the remaining 75% interest pledged the partnership's primary asset – certain real property – as collateral for a purported "loan" on which the partnership promptly defaulted. The district court found that the alleged loan, the sale and the transfer of title to the real property constituted a "fictitious, sham, and fraudulent transaction intended to defraud the United States out of the value of its 25% interest" in the partnership. 13 F. Supp.2d 1316, 1323. The court further found that the transfer of the property without the consent of the United States

7

14. No previous request for the relief sought has been made.

## CONCLUSION

WHEREFORE, the United States of America requests the Court enter the attached proposed Order appointing Kroll as receiver in the above-captioned cases.

Dated: New York, New York
       January **6** , 2006

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By: _Margery B. Feinzig_
Margery B. Feinzig
Perry A. Carbone
Barbara A. Ward
Sharon Cohen Levin
Assistant United States Attorneys
Telephone: (994) 994-1912/1941
(212) 637-1048/1060

cc: Lawrence Bader, Esq. (Counsel for Samuel Israel III)
    Andrew Bowman, Esq. (Counsel for Daniel E. Marino)

---

violated the partnership agreement and was therefore was void. *Id.*

8

# Exhibit A



**Kroll**

*Presented to*

**The United States Attorney's
Office of the Southern District
of
New York**

**October 3, 2005**

*Receivership and
Forensic Accounting
Capabilities*





# Index

## About Kroll

## The Kroll Advantage

- Overview
- Our Approach
- Our Advantage

## Our Services

## Appendix

- Biographies of Selected Professionals



**Kroll**

**About Kroll**

# Kroll

## Introduction to Kroll

*Kroll is the world's leading independent risk consulting company, founded in 1972*

- Global headquarters in New York
- Worldwide presence: Offices in 70 cities located in 26 countries
- More than 4,100 employees, including experts with backgrounds in:
    - *Forensic accounting*
    - *Investigation*
    - *Computer forensics*
    - *Valuation*
    - *Asset tracing*
    - *Divestitures and liquidations*
    - *Formal appointments*
    - *Financial analysis*

*Kroll provides a broad spectrum of services to help clients reduce risks, resolve problems and capitalize on opportunities*

*Kroll serves a global clientele of individuals, law firms, corporations, non-profit institutions, financial institutions and government agencies, including:*

- 350 of the top Fortune 500 corporations
- 238 of the National Law Journal's top 250 law firms

2



*Kroll*

*Global Reach*

# Kroll

## Kroll Services



**Background Screening**
- Background Checks
- Business & Consumer Credit Reports
- Substance Abuse Testing
- Vendor Screening
- Claims Integrity & Identity Fraud Solutions

**Consulting Services**
- Forensic Accounting
- Business Investigations
- Corporate Intelligence
- Security Services
- Business Valuation
- Litigation Consulting

**Kroll**

- Corporate Restructuring
- Operational Turnaround
- Strategic Advisory Services
- Financial Crisis Management
- Corporate Finance

**Technology Services**
- Electronic Discovery
- Data Recovery
- Computer Forensics
- Software Solutions
- New Opportunities



*Kroll*

*The Kroll Advantage*

**Kroll**

## Overview

*Corporate bankruptcy actions, especially those that involve allegations of fraud or other malfeasance, require a multitude of services from professionals with a wide range of expertise and an understanding of the intricacies of the restructuring and liquidation processes.*

*The right approach – that brings together forensic accounting, investigations, business intelligence, anti-money laundering and high-technology services – will allow for maximum recovery by the estate and, in turn, the creditors.*

6



# Our Approach

*Kroll's experts provide an integrated strategy that will produce the best results. We will work closely with The United States Attorney's Office of the Southern District of New York ("U.S. Attorney's Office") to obtain a comprehensive understanding of the ultimate disposition of the missing funds and whether any of these funds may be recoverable. We will also identify any other significant assets that may be available for potential recovery.*

*In addition, Kroll will determine the appropriate distribution of retrieved assets to investors and creditors/victims.*



# Our Advantage

*The various capabilities necessary to handle the varied issues of the Bayou case include:*

- Crisis Management
- Divestitures and Liquidations
- Estate Appointments
- Forensic Accounting Investigations
- Money Laundering Investigations
- Sophisticated Asset Tracing
- High-Tech Investigations

*Enhanced economic efficiencies are gained due to Kroll's appointment as liquidator to the off-shore funds. Kroll has been engaged on a Bayou matter through its affiliates in the Cayman's via the economic advantage of one firm of on-shore and off-shore funds would benefit the ultimate distribution to the creditors/victims to the Bayou estate.*

8



**Kroll**

*Our Services*

**Kroll**

## Corporate Advisory & Restructuring

| | |
|---|---|
| **Restructuring** | Corporate Restructuring – Turnaround Management – Balance Sheet Restructuring |
| **Recovery** | Administrations - Receiverships |
| **Liquidation** | CVL's - MVL's - Provisional Liquidations - Compulsory Liquidations - Bankruptcy |
| **Specialist Services** | Government Services: Court Appointed Receivers Insurance Services: Liquidations - Scheme Run Offs |
| **Corporate Finance** | Mergers & Acquisitions - Fund Raising - Buyouts |

10



# Bayou Offshore Funds

## Background

- Four offshore funds managed by Bayou Management LLC were placed into liquidation in September 2005
- In excess of U$50 million was raised from investors.
- Liquidators were subsequently appointed over three additional related companies in the Cayman Islands.

## The Project

- As the appointed Liquidators, our initial work involved:

  » *Filing of petitions under § 304 of the U.S. Bankruptcy Code to commence proceedings ancillary to the Cayman Islands liquidations.*
  » *Identification of recoverable assets and collation of information to be used in subsequent forensic exercise that may lead to additional recoveries.*
  » *Identification of third parties involved in handling assets of the group.*
  » *Reviewing the flow of funds from the offshore funds to related entities in the United States of America.*
  » *Contacting all known past and present investors of the funds.*

## Key Issues Experienced

- Cross border issues relating to the realisation of assets and investigations in the United States of America.

## Achievements

- Immediate correspondence established with investors of the funds.
- Website created (www.bayoucaymanliquidation.ky) presenting all publicly available information and specific email address to deal with investor enquiries.
- Early filing of US Bankruptcy Code §304 to protect the interests of the offshore funds' creditors, investors and shareholders and to pursue independent investigations into the funds' circumstances.



# Corporate Advisory Services – Notable Cases

---

**CAYMAN ISLANDS**

parmalat

Liquidation of Cayman Islands operations

>$17b reported deficit

Liquidator

Kroll

---

**EUROPE**

Buhel

Restructuring of operations

$4b assets

Administrator to European Group

Kroll

---

**EUROPE**

FEDERAL MOGUL

Restructuring of operations

$6b turnover

Administrator to UK Group

Kroll

---

**CAYMAN ISLANDS**

Cash 4 Titles

>US$300m investments

Liquidator of 57 connected companies

Kroll

---

**USA**

ENRON

Restructuring of second largest bankruptcy in US

$65b assets

Interim CEO and Management

Kroll

---

**UK**

 Le MERIDIEN

Restructuring Contingency Planning

£1.8b debt

Adviser to Secured Creditor

Kroll

---

**USA**

GOODYEAR

Restructuring & guidance throughout Chapter 11

$1.1b turnover

Adviser to the Company

Kroll

---

**CAYMAN ISLANDS**

Cayman Islands Hedge fund

$500m losses

Liquidator

Kroll

---

**EUROPE**

Global Crossing

Restructuring of European Creditor position

$30b assets

Adviser to the Company

Kroll

---

**UK**

International Marketing Company

Restructuring Contingency Planning

£200m debt

Adviser to Management

Kroll

---

12

**Kroll**

# Forensic Accounting Services

*Kroll's forensic accountants have extensive experience in accounting, complex fraud and SEC investigations as well as independent examination and monitoring engagements.*

*Members of our team have worked on numerous engagements of this type. Our experience includes:*

- Appearing and testifying before the SEC on several occasions regarding complex accounting and reporting matters
- Conducting the first-ever outsourced investigation in SEC history
- Leading extremely high-profile engagements, such as Enron, considered one of the most complex fraud cases in business history

*Our experts reconstruct financial records by conducting a detailed analyses of electronic and hardcopy books and records including, but not limited to:*

- Internal Records
  - *General and Subsidiary Ledgers*
  - *Cash, Investments, and Accounts Receivable and Payable Records*
  - *Correspondence, including Memos, Emails, etc.*
  - *Contracts and Leases*
- External Records
  - *Bank Records*
  - *Vendor Invoices*
  - *Customer Remittance*
  - *Auditor Working Papers*
  - *Tax Returns*

*In addition, we identify transactions involving potential wrongdoing and misappropriations, including related-party transactions.*



**Kroll**

# Forensic Accounting – Notable Cases

## Enron

- Provided forensic accounting and litigation consulting to the company and its outside counsel

- Performed complex analyses, assisting counsel in the identification and prosecution of more than 1,000 actions

## Spiegel

- Engaged by Court-appointed Examiner to act as forensic accountants in connection with the investigation of Spiegel on behalf of the Securities and Exchange Commission

- Investigation involved technical accounting issues and resulted in a 200-page report filed by Spiegel with the SEC on Form 8-K

## Major Telecommunications Company

- Performed forensic accounting services for the bondholders in one of the largest telecommunications bankruptcies

- Work resulted in the bondholders' recovering more than twice the amount received by any other creditor class



**Kroll**

# Asset Tracing and Anti-Money Laundering

*Kroll's asset tracing experts and Certified Anti-Money Laundering Specialists have performed hundreds of investigations, the vast majority of which were performed on a confidential basis and are not known to the public.*

*Our team of specialists expertly assist in tracing unaccounted monies, whether they have been converted into other sources, or are hidden away in foreign jurisdictions.*

*In a typical investigation, we attempt to identify and/or locate any assets that may be available for potential recovery, including:*

- Real Property
- Personal Property
- Business Interests
- Other Financial Assets and Interests

*Intelligence is gathered from two main sources:*

- "Open Sources," which include:
  - *Real property transactions*
  - *Tax assessors' records*
  - *Indices of liens and judgments*
  - *Litigation dockets*
  - *Pleadings and obtainable discovery*
  - *Filings of corporations*
  - *Partnerships and assumed names*

- "Human Sources," such as:
  - *Current and former employees*
  - *Business contacts*

15


**Kroll**

# Asset Tracing and Anti-Money Laundering – Notable Cases

## Telecommunications Fraud

- Kroll was retained by two major telecommunications companies defrauded by a criminal enterprise in Central Europe.

- To date Kroll has identified more than $200 million in concealed assets. (Pending case.)

## Former Heads of State

- Kroll has frequently been retained to conduct international asset searches for governments seeking to recapture assets misappropriated by former heads of state or, in the case of Iraq, reparations for war crimes. Examples include:

    – Investigation of **Jean-Claude Duvalier** for the government of Haiti. Investigation resulted in the seizure of bank accounts in Luxembourg.

    – Investigation of **Ferdinand and Imelda Marcos** for the U.S. House of Representatives Foreign Affairs Committee. Investigation resulted in the seizure of $1 billion in real estate value in New York.

    – Investigation of **Saddam Hussein** for the Kingdom of Kuwait during the first Gulf War. Findings linked Saddam to millions in assets held through nominee companies in the U.S. and Europe, exposing his front companies and agents.



# High-Tech Investigations

*Kroll's high-tech investigators work with clients to efficiently extract and analyze critical electronic data/information in a minimal amount of time.*

*Our high-tech investigations team is comprised of experts with extensive law enforcement experience.*

*Utilizing proprietary techniques, our specialists work with our forensic accounting experts to uncover otherwise undiscoverable and/or unrecoverable data/information.*

*Our team of experts examines computer systems to:*

- Recover communications and financial data related to an investigation
- Conduct an in-depth analysis and provide consulting services related to:
    - *Email Tracing*
    - *Use of Computer Systems*
    - *Internet History*
    - *Log Files*
- Reconstruct data flow
- Break encrypted files and computer systems

*Kroll's experts also create centralized document repositories as an aid in responding to document requests and other forms of discovery.*

17



# High-Tech Investigations – Notable Cases

## Television Network

- Conducted an identity theft investigation for a television network
- Our investigation led to locating the suspects abroad, contacting the suspects and conducting interviews
- Findings led to the recovery of stolen trade thefts that were obtained through the identity theft

## Enron

- Conducted multiple high-tech investigations related to all aspects of the case, including working with governmental agencies

## Court-Appointed Special Master

- Serve as an Independent Special Master for the U.S. District Court in a dispute regarding the migration of proprietary information
- Recover and track electronic information to determine if it has been moved from a restricted area

## Financial Institution

- As the result of ongoing litigation involving a state-chartered banking institution, imaged hard drives and email from servers to address allegations that a bank executive had abused power

**Kroll**

# Contact Information

## Kroll

900 Third Avenue

New York, NY 10022

www.krollworldwide.com

### James P. Shinehouse

Global Practice Leader

Financial Advisory Services

212.833.3438

jshinehouse@krollworldwide.com

### Allen D. Applbaum

Head, Corporate Investigations

Senior Managing Director

212.833.3332

ada@krollworldwide.com

19

**Kroll**

# Biographies of Selected Professionals



**Kroll**

# Biographies

## Jim Shinehouse

*Jim is Global Practice Leader of Kroll's Financial Advisory Services group. He focuses on assisting troubled businesses in the US with cross-border ties in financial and/or operational restructurings. He has over 15 years of hands-on crisis management experience. Jim is regularly hired to conduct complex forensic accounting investigations and to act in the capacity of an expert witness.*

### Major Experiences

*Jim joined Talbot Hughes McKillop to head the US practice in 2003, which was subsequently acquired by Kroll in 2005. For more than 15 years Jim has handled complex US corporate restructurings and workouts for international clients in receivership or administration. In those roles, Jim served as CEO, CRO, Director and/or receiver representative to operate/dissolve/liquidate troubled businesses. Jim was previously CEO of Ferranti International in the US and also spent six years at KPMG.*

*Jim's experience also includes advising creditor groups, operational and financial assessments, and acquisitions and divestitures. Jim has also managed in excess of 100 varied litigation projects and testified in connection with dozens of trials and arbitrations including in Federal, Criminal, and Bankruptcy courts. Jim is a Certified Public Accountant and has taught accounting as an adjunct professor at Franklin & Marshall College.*

### Major Recent Projects

*Director/Plan Administrator in the $450 million restructuring/insolvency of SAir (Group) Finance (USA) (Swiss Air)*

*Financial advisor and forensic accountant to a creditor group in their $358 million constructive trust claim against a major, publicly quoted US conglomerate.*

*Directed the investigation and managed the litigation surrounding a $1.14bn financial/contract fraud (including a $958 million international money laundering scheme). Appointed as CEO/CRO and directed the divestiture of the company's operations and assets as part of its overall worldwide receivership.*

*$9bn restructuring of Marconi plc as advisor to the UK parent regarding the restructuring in the US.*

*Directed US restructuring of Transtec, a UK receivership, including arranging bridge financing and sale of the second largest US laser manufacturer to an Italian strategic buyer.*

*Directed the US restructurings and workouts of Ferranti, NSM, John Lawrence, Photobition, USM, all of which were in receivership or administration.*

**Kroll**

# Biographies (cont'd.)

## Allen D. Applbaum

*Allen Applbaum is the Head of Kroll's Corporate Investigations Practice and a Senior Managing Director and Regional Counsel in Kroll's worldwide headquarters located in New York.*

*A former federal prosecutor, Allen plays a leading role in Allen plays a leading role in Kroll's investigative, intelligence and security services, and has extensive experience managing internal investigations, domestic and international investigative due diligence, litigation support, intellectual property intelligence, monitoring and crisis management assignments.*

*As a former Deputy Chief of the Criminal Division and the former Chief of the General Crimes Unit in the Office of the United States Attorney for the Southern District of New York, Allen brings Kroll nearly nine years of experience conducting and supervising investigations. During his tenure as Deputy Chief of the Criminal Division in the Southern District of New York, he supervised and directed investigations with local, state and federal law enforcement agencies; participated in policy making and management of the United States Attorney's Office; and served as the Office's International Affairs Coordinator in charge of all requests for international legal assistance from foreign governments.*

*Prior to his appointment as Deputy Chief of the Criminal Division, Allen gained broad experience in criminal investigations and trials, prosecuting organized crime, fraud, narcotics and money laundering cases. For his investigative efforts in two separate organized crime prosecutions, he received the Department of Justice Director's Award for Superior Performance in 1996 and the Attorney General's Award for Distinguished Service in 1997. He also served as the Chief of the General Crimes Unit, where he was responsible for training and supervising all new Assistant U.S. Attorneys in procedural and substantive aspects of the United States Attorney's Office.*

*Allen began his career as a law clerk to the Honorable Lowell A. Reed, Jr., United States District Judge in the Eastern District of Pennsylvania. While in Philadelphia, served as an Adjunct Professor of Law at Temple University School of Law.*

*Allen received his J.D. from the Benjamin N. Cardozo School of Law, where he served as the Managing Editor of the Law Review.*



**Kroll**

# Biographies (cont'd.)

## Jim Cleaver

*Jim was one of the founding partners of Kroll (Cayman) Limited. He was previously managing partner of Ernst & Young in the Cayman Islands.*

*Jim has specialized in the liquidation of international financial services companies and currently acts as joint or sole liquidator of over sixty companies. Jim has also acted as Controller of various Cayman Islands regulated companies, reporting on their operations to the Cayman Islands Monetary Authority ("CIMA").*

*Jim is a fellow of the Institute of Chartered Accountants of England and Wales, a member of the Insolvency Practitioners Association and a Certified Fraud Examiner. He is a member and past council member of the Cayman Islands Society of Professional Accounts. He is also a past member of the Cayman Islands Insolvency Law Review Committee and the Company's Law Review Committee and a current member of the Financial Secretary's Private Sector Consultative Committee.*

### Example Engagements

*Acted as joint liquidator of a hedge fund that incurred nine figure US$ losses and made substantial recoveries for creditors.*

*Investigated and reported on the operations of various companies allegedly involved in international money laundering activities. The investigation included the identification, analysis and documentation of suspicious transactions amounting to over US$300 million. Appointed by CIMA as Controller of several insurance companies. Appeared in court as a witness in a subsequent trial. Operating outside the terms of their licences.*

*Acted as joint liquidator of the operating subsidiary of a major British bank that was subject to a serious misappropriation of funds.*

*Acted as Agent for the Trustee in Bankruptcy for a major estate involving asset realizations through various corporate structures across several countries.*

*Appointed as liquidator of several Cayman Islands insurance companies that had operations across multiple jurisdictions and involved significant cross border issues.*

*Managed the compulsory and voluntary liquidations of numerous mutual funds.*

23



# Biographies (cont'd.)

## Gordon MacRae

*Gordon was one of the founding partners of Kroll (Cayman) Limited. He was previously a partner with Ernst & Young in the Cayman Islands.*

*Gordon has over 14 years experience in cross border liquidation and restructuring proceedings. He has specialized in the liquidation of international financial services companies including all statutory aspects of liquidation proceedings, control and recovery of assets, litigation support and liaison with creditor committees. In addition he has been involved in a number of Cayman Islands regulatory appointments as controller and advisor of regulated companies, reporting on their operations to the Cayman Islands Monetary Authority ("CIMA").*

*Gordon is a Chartered Accountant and a Certified Fraud Examiner. He is a former council member of the Cayman Islands Society of Professional Accountants ("CISPA") and currently serves as a member of CISPA's Insolvency Practitioners Committee. In addition Gordon serves on the Insolvency Law Review Committee of the Cayman Islands.*

## Example Engagements

*Appointed as joint liquidator of seven Bayou related funds in the Cayman Islands.*

*Appointed as joint liquidator of Parmalat related companies in the Cayman Islands.*

*Investigated and reported on the operations of several companies allegedly involved in international money laundering activities. The investigation included the identification, analysis and documentation of suspicious transactions amounting to over US$300 million. Appeared in court as a witness in a subsequent trial.*

*Managed the liquidation and subsequently acted as joint liquidator of a hedge fund that incurred losses in the region of US$500 million following the Russian financial crises of 1998.*

*Investigated and reported on the activities of various Cayman Islands mutual funds that were operating outside the terms of regulatory requirements.*

*Appointed by CIMA as Controller of several insurance companies operating outside the terms of their licenses.*

*Appointed as liquidator of several Cayman Islands insurance companies that had operations across multiple jurisdictions and involved significant cross border issues.*

*Investigated the conduct of the directors of a special purpose financing vehicle in relation to their investment decisions and monitoring of performance.*

*Appointed by CIMA as Controller of a bank with serious solvency and financial reporting issues.*



# Biographies (cont'd.)

## Nathaniel Barker

Nat joined Talbot Hughes McKillop in September 2003 from KPMG's US Corporate Recovery practice. Prior to that he was with Arthur Andersen's Corporate Recovery division, where he worked with the principals of the firm on numerous international assignments. In addition to Nat's cross-border work, he has significant experience advising debtors and creditors in US bankruptcy cases including the sale of assets / equity, refinancings, and developing plans of re-organization. Nat also has expert skills in forensic accounting, litigation support, and business valuation which he uses extensively in assisting counsel and their clients in resolving legal matters. Sector experience includes entertainment, manufacturing, retail, distribution, coal mining, real estate development, and health care.

Nat is a Certified Insolvency and Restructuring Advisor, formerly held US NASD securities licenses 7 and 63, and is based in the US.

## Example Engagements

Financial advisor and forensic accountant to a creditor group in their $358 million constructive trust claim against a major, publicly quoted US conglomerate.

Advisor to the Official Unsecured Creditors Committee in the restructuring of Cannondale (bicycle manufacturer) including the Company's sale to Pegasus Partners II, L.P.

Advisor to the Official Unsecured Creditors Committee for the restructuring of US$1.2bn in debt of Loews Cineplex Entertainment through a plan of reorganization.

Advisor to the Official Unsecured Creditors Committee including the confirmed joint plan of reorganization and sale of stock of GC Companies, Inc. (General Cinemas) to AMC Entertainment Inc.

Advisor in the US restructuring of Transtec, a UK insolvency, including arranging bridge financing and sale of the second largest US laser manufacturer to an Italian strategic buyer.

# *Kroll*

## *Biographies (cont'd.)*

### *Roger D. Siefert*

*Roger Siefert, a Managing Director based in Kroll's New York City office, is the North American Practice Leader for the Financial Advisory Services group. Roger has more than 20 years of public accounting and forensic and litigation consulting experience, advising business in multiple industries (including financial services, manufacturing and consumer products) and ranging in size from small, closely-held businesses to multi-national, publicly-traded companies.*

*Roger's recent experience includes managing all forensic accounting and litigation consulting efforts by and on behalf of post-petition Enron in connection with the company's failure and subsequent bankruptcy; working as the forensic accountant to the Court-appointed Examiner of Spiegel, addressing issues related to the company's questionable financial position and alleged underlying accounting regularities; and serving as the liability expert for the defendant in a 10b-5 class action lawsuit, a Fortune 500 consumer products company.*

*Prior to joining Kroll, Roger was a partner with Deloitte & Touche, where he worked for over 20 years as an auditor, as well as with the firm's dispute consulting practice and in its Office of General Counsel. During his tenure with Deloitte & Touche, he provided assurance services to financial institutions and was a firm designated banking specialist; forensic accounting and litigation consulting to many clients and their counsel, as well as to the firm's own in-house attorneys and outside law firms.*

*Roger is a CPA licensed in New York and Indiana; a member of the American Institute and the New York State Society of CPAs and the Association of Insolvency and Restructuring Advisors; and a graduate of Indiana University (B.S., Business Administration, with high distinction, emphasis in accounting).*

**Kroll**

# Biographies (cont'd.)

## Jerry F. Barbanel

*A Managing Director in Kroll's New York office, Jerry Barbanel is the firm's National Practice Leader for Forensic and Investigative Accounting. He has more than 20 years of professional services experience, including serving as an auditor, prosecutor, forensic and investigative accountant, and litigation consultant.*

*Jerry has provided consulting advice to global, multi-national and domestic companies, boards of directors, special committees and audit committees of the board and their inside and outside counsel in numerous industries. On several occasions, he has successfully employed his forensic and investigative skills by directing accounting, financial and operational pre-acquisition due diligence engagements for leading financial institutions and other potential suitors. Jerry's experience also includes advice to counsel regarding numerous complex fraud and internal corporate investigations; in connection with several matters arising from alleged accounting irregularities; and with respect to the design and review of compliance, audit, risk management, fraud prevention, detection and monitoring programs.*

*Jerry joined Kroll from Arthur Andersen's Business Fraud & Investigation Services practice, where he was a principal; prior to that, he was a director with KPMG's Forensic & Litigation Services practice. His legal experience includes serving as an assistant district attorney in the Manhattan District Attorney's Office, where he prosecuted financial crimes and other cases, as well as in private practice. He also handled complex cases, including working closely with lead prosecutor, Eliot Spitzer, in the prosecution of the Gambino crime family's trucking empire. Jerry began his career as a financial services auditor with KPMG's predecessor, Peat Marwick Mitchell & Co.*

*He is a CPA licensed in New York; admitted to the bars of the U.S. Supreme Court, U.S. District Courts for the Southern and Eastern Districts of New York and the states of New York and New Jersey; a Certified Fraud Examiner; Certified Anti-Money Laundering Specialist; and a Certified Insolvency and Restructuring Advisor. Jerry is a member of the American Institute of Certified Public Accountants and the New York State Society of Certified Public Accountants; the American, New York State and New York City Bar Associations; the Association of Insolvency and Restructuring Advisors. Jerry is a graduate of New York University (B.S., Accounting, cum laude) and the Hofstra University School of Law (J.D., with honors).*



**Kroll**

# Biographies (cont'd.)

## Warren G. Kruse II

*Warren Kruse is the head of the East Coast High-Tech Investigations & Information Technology Consulting practice. He has more than 25 years of combined information technology, high-technology investigations and law enforcement experience. Warren previously was the founder and managing partner of Computer Forensic Services, LLC. Before that, he served as the technical investigations manager at Lucent Technologies. In this capacity, Warren was responsible for global computer forensic investigations and incident response matters. He began his career as a police officer with the Township of Ocean Police Department in New Jersey. While in this role, he assisted the Criminal Investigations Division with computer crimes and investigations.*

*Warren assists clients with intellectual property and trade secret theft, corporate misconduct, identity theft, sexual harassment, inappropriate use of computer resources and security breach matters. He has worked with a broad range of clients, including major law firms and Fortune 100 companies, on matters both domestically and internationally. Warren has testified in criminal and civil cases and has also been named a court-appointed expert. In addition, he has provided his expertise to assist in the advancement of major government-sponsored anti-cybercrime initiatives.*

*An accomplished writer, Warren is the co-author of the best-selling book on computer forensics, <u>Computer Forensics: Incident Response Essentials.</u>*

*Warren is a licensed CISSP and CFCE. He is the International President of the High Technology Crime Investigation Association; a member of the Electronic Crimes Task Forces of the U.S. Secret Service, New York and Europe; Infragard; and the International Association of Computer Investigative Services.*



# Kroll

## Biographies (cont'd.)

### Daryk Rowland

Daryk Rowland is the leader of Kroll's U.S. High-Technology Investigations & Information Technology Services practice. He has more than 20 years of law enforcement experience, investigating criminal cases for both the U.S. Attorney's Office and the Orange County District Attorney's Office. He began his career in technology investigations and computer forensics in 1992.

Prior to joining Kroll, Daryk served as a detective for the Huntington Beach Police Department where he was responsible for investigating technology crimes and examining computer evidence. During his tenure, Daryk worked on numerous cases involving the distribution of child pornography and served on the FBI's Sexual Assault Felony Enforcement Team. He also was responsible for investigating criminal cases related to software piracy, intrusions and financial crimes.

He has substantial experience in conducting large-scale data analyses to establish fraudulent activities; establishing criminal cases against former employees; conducting email and Internet history investigations; and reconstructing email activity.

Daryk has instructed and developed courses for the California Department of Justice on technology and computer crimes, investigating Internet crimes and computer forensics for the advanced investigator.



# Biographies (cont'd.)

## Daniel Karson

*Daniel Karson has more than 30 years' experience directing investigations of business crimes and regulatory violations.*

*Dan's notable litigation support and asset search cases include investigations of Ferdinand Marcos for the U.S. House of Representatives, and Jean Claude Duvalier for the Republic of Haiti. His practice areas include major investigations of fraud and cases involving litigation support, contests for corporate control, crisis management, asset searches, grey market diversion and due diligence.*

*Prior to joining Kroll in 1983, Dan was General Counsel and Assistant Commissioner of the Department of Investigation of the City of New York. He was the first Director of the New York City Inspector General Program and directed investigations and determined policy for the internal investigating offices of 24 mayoral agencies. His office was responsible for investigating crime and misconduct by city employees and by persons and companies doing business with the City of New York. Previously, he worked as an assistant district attorney for Bronx County, where he served as Chief of Narcotics Investigations.*

*Dan is the author of numerous published articles on conducting internal corporate investigations, due diligence investigations and tracing concealed assets. He co-authored the chapter entitled, "Implementation and Operation" in The Bureau of National Affairs' Prevention of Corporate Liability manual. He also authored the chapter entitled, "Inside vs. Outside Resources" in the American Corporate Counsel Association publication, Corporate Internal Investigations. He is a frequent speaker at legal, banking and professional seminars and is a board member of the Greater New York Chapter of the American Corporate Counsel Association.*

*Dan graduated cum laude from Ithaca College, and now serves as a member of the college's Board of Trustees. He received a Juris Doctor degree from the New York University School of Law, and is admitted to the New York State Bar, the U.S. District Courts for the Eastern and Southern Districts of New York, the Second Circuit and the U.S. Supreme Court.*