KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
Richard A. Kirby
Philip M. Guess
1601 K Street
Washington, DC 20006-1600
Telephone: (202) 778-9000
Facsimile: (202) 778-9100

Litigation Counsel for the Official
Unsecured Creditors' Committee

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
                                                                 :
UNITED STATES OF AMERICA,                                        :
                                                                 :   Case No. 05-cr-01036 (CM)
       v.                                                        :
                                                                 :
DANIEL E. MARINO,                                                :
                                                                 :
                              Defendant.                         :
-----------------------------------------------------------------X
                                                                 :
UNITED STATES OF AMERICA,                                        :
                                                                 :   Case No. 05-cr-01039 (CM)
       v.                                                        :
                                                                 :
SAMUEL ISRAEL III,                                               :
                                                                 :
                              Defendant.                         :
-----------------------------------------------------------------X
                                                                 :
UNITED STATES OF AMERICA,                                        :
                                                                 :   Case No. 06-cr-01138 (CM)
       v.                                                        :
                                                                 :
JAMES G. MARQUEZ,                                                :
                                                                 :
                              Defendant.                         :
-----------------------------------------------------------------X

**OFFICIAL UNSECURED CREDITORS' COMMITTEE'S OPPOSITION TO
PETITIONERS' REQUEST TO MODIFY ANY PROPOSED RESTITUTION ORDER**

TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................ 2

    A.   The Bayou Fraud. ............................................................................................... 2

    B.   The Bayou Fraud is Discovered, Some Bayou Investors Fully ...................... 3

    C.   Government Seizure of the Bayou Assets and Scheduled Sentencing of the Bayou Principals .......................................................................................................... 4

    D.   The Bayou Bankruptcy and the Adversary Proceedings against the Petitioners ........... 5

    E.   The Adversary Proceeding Settlements of Potential Claims ......................... 6

    F.   The Non-Settling Redeemers ............................................................................ 7

ARGUMENT ..................................................................................................................... 7

    A.   The Petitioners are not "victims" under the MVRA ....................................... 8

        1.   A person or entity is not a "victim" where their loss is unliquidated, contingent and hypothetical .......................................................................... 8

        2.   There is no precedent for deviating from the requirements of the MVRA ............... 9

    B.   There is no precedent for Petitioners' request to create a reserve fund or indefinitely postponing entry of the restitution order ................................................................. 11

CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*U.S. v. Barany*, 884 F.2d 125 (9th Cir. 1989) .................................................................. 9, 10

*U.S. v. Cummings*, 281 F.3d 1046 (9th Cir. 2001) ........................................................... 9, 10

*United States v. Berardini*, 112 F.3d 606 (2d Cir. 1997) ..................................................... 10

*United States v. Catoggio*, 326 F.3d 323 (2d Cir. 2003) .................................................. 8, 14

*United States v. Cheal*, 389 F.3d 35 (1st Cir. 2004) ............................................................. 11

*United States v. Farr*, 419 F.3d 621 (7th Cir. 2005) ............................................................. 13

*United States v. Follet*, 269 F.3d 996 (9th Cir. 2001) .......................................................... 12

*United States v. Grimes*, 173 F.3d 634 (7th Cir. 1999) ........................................................ 13

*United States v. Mueffelman*, 400 F. Supp. 2d 368 (D. Mass. 2005) .................................. 10

*United States v. Pawlinski*, 374 F.3d 536 (7th Cir. 2004) .................................................... 13

*United States v. Stevens*, 211 F.3d 1 (2d Cir. 2000) ....................................................... 13, 14

*United States v. Zakhary*, 357 F.3d 186 (2d Cir. 2004) ......................................................... 9

**Statutes**

18 U.S.C. § 3663A(a)(2) .......................................................................................................... 8

18 U.S.C. § 3664 .............................................................................. 7, 8, 9, 11, 12, 14, 15

18 U.S.C. § 3664(d)(5) ............................................................................................ 11, 13, 14

18 U.S.C. § 3664(o) ............................................................................................................... 12

21 U.S.C. § 853 ...................................................................................................................... 12

21 U.S.C. § 853(i) .................................................................................................................. 12

28 U.S.C. § 2461(c) ............................................................................................................... 12

**Other Authorities**

S. Rep. No. 104-179 (1995) ............................................................................................... 7, 8

## OFFICIAL UNSECURED CREDITORS' COMMITTEE'S OPPOSITION TO PETITIONERS' REQUEST TO MODIFY ANY PROPOSED RESTITUTION ORDER

The Official Unsecured Creditors' Committee of the Bayou Entities (the "Official Committee") opposes the Petitions and/or Motions filed by Petitioners[1] to "modify" the anticipated Restitution Order to permit: i) the establishment of a restitution reserve for future victims; ii) the recognition of contingent or hypothetical claims under any proposed restitution order; and/or, iii) the indefinite postponement of the distribution of seized funds under a restitution order to the actual victims of the Bayou fraud.

### PRELIMINARY STATEMENT

The principal remaining assets of the Bayou fiasco are over $100 million in Bayou funds forfeited to the United States. These funds are the bulk of the tangible Bayou assets remaining after Bayou's victims lost their investments in defendants' Ponzi scheme. The government intends to distribute the forfeited funds to Bayou's victims as established by restitution orders that this Court will issue as part of the sentencing of Bayou's principals: Samuel Israel and Daniel Marino. The Petitioners, Bayou investors nearly all of which redeemed their entire principal investment and fictitious profits, seek to delay or curtail these distributions. Their claim rests on the argument that they, the financial beneficiaries of the Bayou Ponzi scheme, are victims just like those who lost their entire investment. Their

---

[1] "Petitioners" refers collectively to the "Sonnenschein Investors" ("Sonnenschein Investors"), the Freestone Low Volatility Partners, LLP's ("Freestone"), the Christian Brothers High School Endowment ("Christian Brothers"), Sterling Stamos Security Fund, L.P. ("Sterling Stamos"), Highgate Partners, L.P. ("Highgate"), and the Trail Ridge Flatiron Fund, L.P. ("Flatiron"), all of which filed petitions and/or motions with this Court seeking similar relief. What these entities all have in common is that they redeemed all or nearly all of their principal investments as well as substantial fictitious profits from the Bayou Funds before their collapse in the summer of 2005. Petitioners are also defendants in adversary proceedings commenced by the debtors to recover those redemptions based on claims that these transfers were fraudulent.

argument is directly contradicted by the governing statute, applicable case law, equity and common sense. This Court should deny the Petitions in their entirety.

The Petitioners' request for relief is legally unprecedented and inconsistent with the Mandatory Victims' Restitution Act ("MVRA"), the exclusive procedure for ordering restitution. While the Petitioners invested in the Bayou Ponzi scheme, the Petitioners cannot credibly establish that they are "victims" within the meaning of the MVRA. In fact, most *Petitioners fully redeemed their principal investment and collected unearned, fictitious profits*[2]—*some as much as 30 percent of their principal investment*. These are not, as the MVRA requires, persons or entities who were "directly and proximately harm[ed]" as a result of the Bayou Fraud. To the contrary, while the balance of Bayou investors suffered losses exceeding $300 million, Petitioners are among a select group who successfully reclaimed their investments along with fictitious profits more than two years ago.

Petitioners seek to have it both ways: they want to keep their entire redeemed principal and fictitious profits, litigate their defenses in the Bayou bankruptcy, while simultaneously converting the restitution order into a form of insurance policy against an adverse result in the bankruptcy by claiming "victim" status for purposes of the pending restitution orders. This Court should enter a restitution order now identifying known victims, and not allow Petitioners to delay or disrupt the prompt distribution of the forfeited assets to the true Bayou victims.

## STATEMENT OF FACTS

**A.     The Bayou Fraud.**

Defendants Samuel Israel III, Daniel E. Marino and James G. Marquez founded the hedge funds Bayou Fund LLC and Bayou Fund Ltd. in 1996 (Marquez, No. 06-1138, Dkt. No. 30 (Gov't Sentencing Mem. 4)). In 1997 and 1998 the Bayou funds sustained losses amounting to millions of dollars (*Id.* at 9). The funds began falsifying financial disclosures

---

[2] Of the 30 Petitioners, approximately 26 fully redeemed their principal as well as fictitious profits. The remaining four Petitioners each redeemed 80 percent or more of their investment.

and fraudulently misrepresenting investment performances to conceal those losses (*Id.* at 9-10). With the aid and encouragement of Israel and Marquez, Marino created a fictitious accounting firm, Richmond-Fairfield Associates, CPA, PLLC, to pose as an independent auditor of the funds (*Id.* at 10).

As losses mounted, Bayou evolved into a classic "Ponzi Scheme" fraud. Fake financial statements—signed off on by the sham accounting firm—were provided to current and prospective investors (*Id.*). Through such falsifications, Israel and Marino[3] were able to maintain current investors and attract new investors (*Id.*). A central part of their fraudulent scheme was to lure investors into believing the exaggerated claims of success by paying redeeming investors off on the basis of these artificial statements (*Id.* at 10, 21). The Petitioners are among the beneficiaries of this aspect of the fraud. As long as Israel and Marino maintained the facade of a successful hedge fund, they could attract new investors, pay departing investors, and continue to siphon millions of dollars for their own personal gains.

B.   **The Bayou Fraud is Discovered, Some Bayou Investors Fully Redeem, Others Fall Victim to the Bayou Fraud.**

The Bayou fraud continued into the summer of 2005 (*Id.* at 22). At that time, the fraud had caused in excess of $300 million in losses (*Id.* at 21-22). As alleged in the Bayou bankruptcy proceedings, prior to the collapse of the hedge funds in August 2005, certain investors came to suspect, or were tipped, as to certain accounting irregularities and related government investigations. During the latter part of 2004 through July 2005, a substantial number of Bayou investors exercised their contractual right to redeem. *See Bayou Group LLC v. WAM Long/Short Fund II*, 362 B.R. 624, 628-29 (Bankr. S.D.N.Y. 2007). Yet, instead of being paid their pro rata share of the funds based on the actual diminished value of the Bayou funds, the early-redeeming investors were paid based on the defendants' contrived

---

[3] Marquez, who departed Bayou in 2001, apparently ceased his participation in the Bayou fraud at or around that time period (*Id.* at 11).

3

accounting, thereby obtaining the return of their investment principal as well as fictitious profits. Thus, these very redemptions were an integral part of the defendants' fraudulent scheme (*Id.*). Since Bayou operated as a Ponzi Scheme—in which new investors were necessary to fund departing investors—these inflated redemptions without actual earnings precipitated Bayou's collapse, leaving a substantial number of creditors with approximately $300 million of unpaid principal (*Id.*).

C.   **Government Seizure of the Bayou Assets and Scheduled Sentencing of the Bayou Principals.**

Prior to collapse, the Bayou Hedge Fund made a series of bank transfers to various European bank accounts that exceeded $100 million. (Marquez, No. 06-1138 Sentencing Mem. at 21-22; Marino, No. 05-1036 and Israel, No. 05-1039, Dkt Nos. 12 (Final Forfeiture Orders)). In May 2005, the Arizona Attorney General, suspecting the perpetration of a prime bank scheme, seized these assets and instituted forfeiture proceedings under Arizona law (Declaration of Richard A. Kirby In Support of Committee's Opposition to Petitions ("Kirby Decl."), Ex. 1 (May 27, 2005 Notice of Seizure of Forfeiture)). The assets were finally forfeited under Arizona law to the State of Arizona in September 2005 (*Id.*, Ex. 2 (Order of Forfeiture)). The United States, which had traced the assets to the Bayou fraud, requested the State of Arizona transfer these assets to the jurisdiction of the United States so that they could be returned to the victims of the fraud (*Id.*, Ex. 3 (Application for Transfer)). The Arizona court granted this request, and on October 18, 2006, the funds (together with accrued interest), were transferred to the custody of the federal government (*Id.*, Ex. 4 (Order Directing Transfer of Released Funds)).

On September 29, 2005, Israel pleaded guilty to conspiracy, investment advisor and mail fraud charges (No. 05-1039, Dkt. No. 9). Marino pleaded guilty to similar charges on October 11, 2005, and also pleaded guilty to an additional wire fraud charge. (No. 05-1036, Dkt No. 9.) On December 14, 2006, Marquez pleaded guilty to conspiracy to defraud investors of over $10 million. (No. 06-1138, Dkt. No. 10.) After the defendants pleaded

guilty, the Court entered forfeiture orders against both Israel and Marino that expressly included reference to the seized $100 million now held by the federal government[4] (Israel, Dkt. No. 12; Marino, Dkt. No. 12). Marquez, Israel and Marino are now awaiting sentencing. The Official Committee is advised that the government intends to recommend that these forfeited assets be returned to victims based on restitution orders to be entered as part of the sentences of Israel and Marino.

**D.     The Bayou Bankruptcy and the Adversary Proceedings against the Petitioners.**

After the 2005 Bayou collapse, the Bayou investors sought to replace Bayou management with Jeff Marwil, a fiduciary of their own selection, and this Court granted that request. (*The Unofficial Onshore Creditors' Committee of the Bayou Family of Companies v. Bayou Group LLC*, Civil No. 06-2379, Dkt. No. 12). Following his appointment, Mr. Marwil filed voluntary bankruptcy petitions and the Bayou entities entered bankruptcy on May 30, 2006. (*In re Bayou Group LLC*, No. 06-22306, Dkt. No. 1 ( Bankr. S.D.N.Y. 2006)). Mr. Marwil, acting as the debtor-in-possession ("Debtors"), then initiated fraudulent transfer claims in 119 adversary proceedings against the early redeemers under the intentional fraudulent transfer provisions § 548 of the Bankruptcy Code and state law (*Bayou Group LLC*, 362 B.R. at 626-27 and Schedule A)). The adversary complaints focus on the Ponzi scheme payments, and seek recovery of both principal and fictitious profits paid out as part of the Ponzi scheme (*Id.*). Shortly after the cases were filed, the adversary proceeding defendants moved to dismiss the fraudulent transfer claims (*Id.*). Bankruptcy Judge Adlai S. Hardin heard these motions on January 24, 2007, issuing a February 28, 2007 ruling that Debtors stated a cause of action for actual fraudulent transfer under both bankruptcy and state law (*Id.*). The bankruptcy court has subsequently ordered expedited discovery, including

---

[4] The forfeiture order applicable to Marquez did not include reference to the seized $100 million, presumably because Marquez exited Bayou prior to the peak of the Bayou fraud. (Marquez, No. 06-1138, Dkt. No. 13.)

discovery as to the adversary defendants alleged statutory good faith defense[5] (*See Bayou Group LLC*, No. 06-22306, Dkt. No. 602 (Amended Discovery Schedule)).

E.  **The Adversary Proceeding Settlements of Potential Claims.**

Throughout the litigation, the Bayou Debtors offered each defendant in an adversary proceeding an opportunity informally to establish their respective good faith defenses (Kirby Decl., ¶ 7). In other words, if an adversary defendant could demonstrate to the Debtors that they redeemed their Bayou investment in good faith—*i.e.*, without constructive or actual knowledge of the fraud or contemporaneous government investigations into that fraud—the proceedings against those adversary defendants would be dismissed without the need to refund any principal, provided the defendants repaid fictitious profits (*Id.*).[6] Since the filing of the Bayou bankruptcy, the Debtors have settled with eight actual or potential adversary defendants on these terms.

The Debtors have also to date reached a series of settlements with approximately 63 adversary defendants where the issue of the good faith defense was in factual dispute (*Id.*, ¶ 6). Each of these defendants repaid all fictitious profits, and between 50 and 61 percent of redeemed principal, depending on the particular facts (*Id.*). To date, the Debtors have collected $24,054,289 in returned principal and $6,926,231 in returned fictitious profits (*Id.*, Ex. 5). These proceeds will be distributed to defrauded Bayou investors, after payment of administrative expenses, under the auspices of the bankruptcy court. The Official Committee's understanding is that any adversary defendant that returned any portion of

---

[5] The Bankruptcy Code in Section 548(c) and analogous state fraudulent transfer law allows defendants a defense of good faith to even intentional fraudulent transfers. Thus, much of the discovery in these adversary proceedings has focused on the facts known to the adversary defendants at the time of their redemptions.

[6] Even where an adversary defendant acted good faith, the law requires it to repay any fictitious profits received pursuant to § 548(a)(1)(B) (constructive fraud), because defenses associated with Section 548(c) require not only a showing of good faith but also that there was an exchange of reasonably equivalent value for the amount received, which cannot be shown with respect to fictitious profits. *See Bayou Group*, 362 B.R. at 634-37.

principal to the Debtors—*i.e.*, those that have sustained actual and identifiable losses—will be permitted to participate as authentic "victims" in the restitution order to the extent of their actual losses.

F.     **The Non-Settling Redeemers.**

The remaining adversary defendants (many of whom have filed Petitions) continue to contest their adversary proceeding cases on the issue of good faith, presumably intent on retaining all of their redemptions, including fictitious profits. The Petitioners now ask this Court to treat them as victims—or at least as contingent victims—for the purpose of any restitution order. Though they continue to defend the fraudulent conveyance claims against them, they seek to convert the restitution order into a kind of insurance fund to indemnify them against the contingency that, if they lose their adversary proceedings and repay the resulting judgment, they might then be deemed victims.[7] Until they actually refund their redemptions, however, they have not suffered a cognizable harm, and are not "victims" entitled to restitution under the MVRA.

## ARGUMENT

The MVRA, as codified in 18 U.S.C. § 3664, sets forth the exclusive procedure for ordering restitution in criminal cases. The procedures in Section 3664 provide a comprehensive, mandatory framework defining the scope of restitution orders. 18 U.S.C. § 3664; S. Rep. No. 104-179, at 12-13 (1995), *as reprinted in* 1996 U.S.C.C.A.N. 924, 925-26 ("The committee amendment is intended to . . . establish one set of procedures for the issuance of restitution orders in Federal criminal cases."). Under the statutory scheme, this Court may appropriately order restitution *only* to those victims that are identified as such at the time of sentencing.

---

[7]   The Bankruptcy Code permits such persons to file a claim in the bankruptcy case provided they have paid any judgment against them for fraudulent transfers. *See* Section 502(h) of the Bankruptcy Code.

A.  **The Petitioners are not "victims" under the MVRA.**

   1.  <u>A person or entity is not a "victim" where their loss is unliquidated, contingent and hypothetical.</u>

The Petitioners do not qualify as "victims" within the meaning of the MVRA. The MVRA unequivocally states that a person or entity cannot be a "victim" unless they have been directly and proximately harmed by the criminal conduct. In relevant part, the MVRA defines victims as follows:

> For the purposes of this section, the term "victim" means a person *directly and proximately harmed* as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, *any person directly harmed by the defendant's criminal conduct* in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2) (emphasis added). The "[i]dentification of *victims* is a statutory prerequisite to the application of the MVRA." *United States v. Catoggio*, 326 F.3d 323, 328 (2d Cir. 2003) (emphasis added). As indicated in the MVRA's legislative history, "mandatory restitution provisions apply *only* in those instances where a *named, identifiable victim* suffers a physical injury or pecuniary *loss directly and proximately caused by the course of conduct* under the count or counts for which the offender is convicted." S. Rep. No. 104-179, at 19 (1995), *as reprinted in* 1996 U.S.C.C.A.N. 924, 933 (emphasis added).

The Second Circuit has ruled that the MVRA does not provide restitution for contingent, unidentifiable parties who claim to be victims. *See United States v. Zakhary*, 357 F.3d 186, 189 (2d Cir. 2004). In *Zakhary*, the defendant was convicted of conspiracy to commit credit card fraud. 357 F.3d at 189. The government did not provide an accounting of each specific victim's losses. Rather, a lump sum calculation of $67,000 was submitted to the district court at sentencing, and the court entered a restitution order based on the lump sum. The Second Circuit vacated the restitution order because it was not based on an identification of the victims and an accounting of their losses: "A lump sum restitution order entered

8

without any *identification of victims* and their *actual losses* is not permissible." *Id.* at 191 (emphasis added).

Similarly, Petitioners are not entitled to a restitution order containing a lump sum reserve fund as to "victims" whose losses *might* arise later as a result of pending litigation. Here, the vast majority of Petitioners recovered their *entire* principal investment, as well as gained fictitious profits from their Bayou investment, before the Bayou Ponzi scheme collapsed. At best, any harm to these investors is only hypothetical or contingent. The MVRA makes no provision for such contingencies, stating *twice* that a person or entity must be "directly" harmed to qualify as a victim. Thus, unless the Petitioners sustain legitimate compensable losses, they cannot qualify as "victims."[8]

2.  There is no precedent for deviating from the requirements of the MVRA.

Petitioners seek unprecedented relief. The authorities they cite, *United States v. Mueffelman* and *United States v. Berardini*, do not support such a ruling. *See* Sonnenschein Investors' Pet. at 9-10; Highgate Pet. at 8. In *United States v. Mueffelman*, 400 F. Supp. 2d 368 (D. Mass. 2005), the defendants did not dispute causing over $900,000 in losses, and the government identified more than 300 victims who collectively suffered that loss. *Id.* at 377. The sentencing court ordered that all existing *victims* (*i.e.*, those who had been identified as

---

[8] Similarly, Highgate's contention that it is entitled to restitution for its attorneys' fees for defending the adversary proceedings is without merit. *See* Highgate Pet. at 7 n.1. The case upon which Highgate relies, *U.S. v. Cummings*, 281 F.3d 1046 (9th Cir. 2001), involves a defendant whose ex-wife incurred legal costs attempting to recover her children after defendant kidnapped and removed them to a foreign country. 281 F.3d 1046, 1047-48. Recognizing that there "must be a close connection between the restitution ordered and the injury sustained," the Ninth Circuit held that the ex-wife's losses were a direct and foreseeable result of the defendant's improper removal. *Id.* The *Cummings* court distinguished its facts from those in *U.S. v. Barany*, where the Ninth Circuit had held that an insurance company's legal costs incurred in defending a suit based on a fraudulent insurance claim were not recoverable in restitution because they were *tangentially related* to the defendant's offense. 884 F.2d 1255, 1261 (9th Cir. 1989). The attorneys' fees claim here is more akin to the insurance company fees in *Barany*, where the Ninth Circuit held that the restitution claim was too remote.

having suffered harm by the defendants' fraud), would share in the restitution pro rata, and that unidentified victims could not share in the restitution. *Id.* at 387-86. Similarly, in *United States v. Berardini*, 112 F.3d 606, 608 (2d Cir. 1997), the defendant acknowledged that the losses caused by his fraud totaled $39,271. At sentencing, the government identified the names and addresses of some, but not all, of the victims. *Id.* The sentencing court ordered restitution for the full $39,271, allowing the government additional time to locate the remaining known victims. The Second Circuit affirmed. *Id.* 609-12. In both *Mueffelman* and *Berardini*, there was no question that the victims had suffered direct harm caused by the defendants' fraud. The issues were only *how* to deal with known but unidentified victims. In contrast, none of the Petitioners can now reasonably claim to be victims, and thus they fall outside the protections intended by the MVRA.

Petitioners' reliance on *United States v. Cheal*, 389 F.3d 35 (1st Cir. 2004), is also misplaced. Sonnenschein Investors' Pet. at 10; Highgate Pet. at 5. In *Cheal*, the First Circuit rejected the defendant's argument that a restitution order was invalid where the government was unable to provide a final list of victims and fix the final loss amounts of the defendant's investment fraud until after the end of the 90-day period provided in Section 3664(d)(5). *Id.* at 46-50. There was no dispute that the fraud had occurred and that victims had suffered losses as a result of the fraud. *Id.* Nothing in *Cheal* suggests that a person or entity with no existing loss is a victim, or that a court could indefinitely postpone a final restitution order, as requested by some of the Petitioners.[9]

---

[9] Petitioner Flatiron presents a hybrid case. It redeemed 80 percent of its principal ($1.6 million) prior to the Bayou collapse, but apparently never received the 20 percent ($400,000) balance of its investment (Kirby Decl., Ex. 5). Thus the Committee understands it is to be a scheduled victim in the proposed restitution order for the 20 percent deficiency. The Debtors, however, have sought through an adversary proceeding to recoup the 80 percent redemption on fraudulent transfer grounds (*Id.*). Flatiron here seeks also to establish a reserve fund to protect against the contingency that it fails to prevail in the adversary proceeding. Its claim in this regard is no better than that of other Petitioners; it is not a victim for the amount at issue in the adversary proceeding because it has suffered no loss.

10

**B.     There is no precedent for Petitioners' request to create a reserve fund or indefinitely postponing entry of the restitution order.**

The Petitioners' contention that this Court may direct the government to establish a reserve fund is likewise without merit. Neither the circumstances surrounding the forfeited Bayou funds nor the MVRA. support such relief.

As a threshold matter, those Petitioners asking this Court to establish a reserve fund fail to recognize the difference between government forfeiture and seizure, on the one hand, and the restitution order, on the other. Pursuant to the forfeiture statutes, upon entry of a forfeiture order as part of a sentence in a criminal case, the funds belong to the government. *See* 21 U.S.C. § 853, made applicable by 28 U.S.C. § 2461(c). It is then up to the Attorney General to determine if, how, and when to distribute such funds to victims. *See* 21 U.S.C. § 853(i). Restitution in contrast represents the obligation of the defendant to make his or her victims whole for the losses caused. The MVRA. establishes the exclusive procedure for determining the amount of restitution. *See generally* 18 U.S.C. § 3664. While the Attorney General has determined that the forfeited funds are to be distributed to victims as established in the order of restitution, the restitution order itself does not control the disposition of those funds. Thus, the demand by some Petitioners that this Court order a "reserve fund" is inconsistent with the statutory scheme. This Court must establish who are victims of the defendants' crimes; the Attorney General will control the actual distribution of the forfeited funds based on the determination of victim status made by this Court.

As an alternative to establishing a reserve fund, the Christian Brothers and Highgate ask this Court to indefinitely delay entry of a restitution order. Such a delay is directly contravened by the MVRA. A final order of restitution is to supposed to be entered at the time of sentencing. 18 U.S.C. § 3664(o); *United States v. Follet*, 269 F.3d 996 (9th Cir. 2001). The MVRA provides a limited post-sentencing period to adjust the order where a victim's specific loss is not ascertainable at sentencing:

> If the *victim's* losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so

> inform the court, and the court shall set a date for the final determination of the *victim's* losses, not to exceed 90 days after sentencing. If the *victim* subsequently discovers further losses, the *victim* shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order. Such order may be granted only upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief.

18 U.S.C. § 3664 (d)(5) (Emphasis added). As indicated by the emphasized language, this subsection applies *only to victims* identified at the time of sentencing: its purpose is to permit the government and victims an additional 90 days to determine actual victim losses or, alternatively, to permit victims to supplement the amount of their losses if more losses are discovered. It does not, as some Petitioners appear to suggest, permit extensions to determine whether a party is in fact a victim.

Likewise, the statute does not give courts discretion indefinitely to postpone the decision as to victim status. *See United States v. Pawlinski*, 374 F.3d 536, 540 (7th Cir. 2004) (The court does not have "discretion to ignore the statutory limits on when non-victims may be included in a restitution order."). In fact, courts have no discretion to modify or extend the 90-day grace period established by Congress. "Although we have noted that § 3664 generally is intended to benefit the victims, we have never concluded that the ninety-day time limit may be disregarded for the victim's benefit. Furthermore, *given the clear time limit set forth in § 3664(d)(5), it cannot be said that it was Congress's intent to allow district courts to order restitution at any time.*" *United States v. Farr*, 419 F.3d 621, 625 (7th Cir. 2005) (emphasis added; internal citation omitted). *Cf. United States v. Grimes*, 173 F.3d 634, 640 (7th Cir. 1999) ("The 90-day period for deferral of the order and the provision for amendment later are the chosen methods of dealing with the problem of unascertained victims.").[10]

---

[10] Petitioners cite two cases from the Second Circuit that they claim permit indefinite delay. Neither case supports this position. In *United States v. Stevens*, 211 F.3d 1, 3 (2d Cir. 2000), the defendant appealed the restitution portion of his sentence, arguing that the restitution order was invalid because it was issued more than 90 days after his sentencing. The Second Circuit upheld the order concluding any delay was caused by the defendant's "stonewalling" and "concealing significant assets" and was harmless error. *Id.* at 4. Similarly, in *United States v. Catoggio*, 326 F.3d 323, 325-26 (2d Cir. 2004), the government was unable to present a

Should the Court adopt Petitioners' faulty logic, courts would have to set aside a restitution reserve for future/unknown/contingent victims in many cases, for it is not unusual that all victims of a criminal defendant are not accounted for. The MVRA provides a clear, mandatory time frame that promotes the timely and efficient resolution of restitution claims: identifiable victims' losses are to be ascertained 10 days prior to sentencing; if they are not ascertainable, the sentencing court may set a date for final determination within 90 days after sentencing; and, a victim subject to an existing order may petition for an amendment within 60 days of discovering additional losses. 18 U.S.C. § 3446(d)(5). There are no exceptions. Nothing in the MVRA provides restitution for "contingent," "unliquidated," "hypothetical," "future," "unknown" or any similar purported victims. Had Congress intended to include such provisions, it could easily have done so. It did not.

The Petitioners have to elect their status. If they wish to be treated as victims they have to resolve their adversary proceedings with the debtors in a timely manner that would permit them to be included in a restitution order at the time of sentencing provided they can establish an actual loss. Alternatively, if they wish to stand on their legal rights to defend their Bayou redemption payments, they risk forfeiting any chance at victim status. This is their choice, and this Court should not stretch the MVRA to avoid this result.

---

comprehensive restitution order at the time of sentencing because of the enormity of the fraud. After the defendant consented to delay the restitution order beyond the 90-day limit, he argued on appeal the trial court erred in delaying the restitution order more than 90 days. The Second Circuit held that the defendant was not prejudiced because he consented. *Id.* at 329-30.

Neither *Stevens* nor *Catoggio* suggest that a delay of more than 90 days is permissible. Indeed, both courts held that it is error to delay more than 90 days given the unequivocal time limits in the MVRA, but that such error may be harmless *as to the defendant* where the defendant is responsible for the delay. In fact, the *Catoggio* court reiterated that the "MVRA is clear that restitution can only be imposed to the extent that the victims of a crime are actually identified." 326 F.3d at 328 (citing 18 U.S.C. 3663A(c)(1)(B)).

## CONCLUSION

For the foregoing reasons, the Official Committee requests that the Court deny the Petitions to create a victim reserve restitution fund or postpone entry of the restitution order beyond the statutory time limits in the MVRA.

Dated: December 12, 2007

                                              Respectfully submitted,

                                              KIRKPATRICK & LOCKHART
                                              PRESTON GATES ELLIS LLP

                                              By: *Richard A. Kirby / PMG*
                                                      Richard A. Kirby
                                                      Philip M. Guess
                                                      1601 K Street
                                                      Washington, DC 20006-1600
                                                      (202) 778-9000

                                              *Litigation Counsel to the Official Unsecured*
                                              *Creditors' Committee of Bayou Group, LLC*

**SERVICE LIST**

Margery Beth Feinzig
U.S. Attorney's Office, White Plains
300 Quarropas Street
White Plains, NY 10601
914-993-1912
Fax: 914-993-1980
Email: margery.feinzig@usdoj.gov
*Counsel for Plaintiff USA*

Andrew Bruce Bowman
Law Offices of Andrew B. Bowman
1804 Post Road East
Westport, Ct, CT 06880
(203) 259-0599
Fax: (203) 255-2570
Email: andrew.bowman@snet.net
*Counsel for Defendant Daniel E. Marino*

Lawrence S. Bader
Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C
565 Fifth Avenue
New York, NY 10017
(212) 856-9600
Fax: (212) 856-9494
Email: lbader@magislaw.com
*Counsel for Defendant Samuel Israel III*

Bradley Drew Simon
Simon & Partners LLP
30 Rockefeller Plaza -- 42 Floor
New York, NY 10112
(212) 332-8900
Fax: (212) 332-8909
Email: bradsimon@simonlawyers.com
*Counsel for James G. Marquez*

Stanley A. Twardy
Day Berry & Howard LLP
One Canterbury Green
Stamford, CT 06901-2047
(203) 977-7301
*Counsel for James G. Marquez*

Doreen Klein
Day Pitney, L.L.P.
One Canterbury Green
Stamford, CT 06901
(203) 977-7595
Fax: (203) 977-7301
Email: dklein@daypitney.com
*Counsel for James G. Marquez*

Joseph W. Allen
Jaeckle Fleischmann & Mugel LLP
Fleet Bank Building
12 Fountain Plaza
Buffalo, NY 14202-2292
*Counsel for Christian Brothers High School Endowment Fund*

Michael L. Cook, Esq.
Schulte Roth & Zabel LLP
919 3rd Avenue
New York, NY 10022-3902
*Counsel to Sterling Stamos Funds*

Richard B. Feldman
Rosenberg Feldman Smith LLP
551 Fifth Avenue, 24th Floor
New York, NY 10176
*Counsel for Freestone Low Volatility Partners LP*

Bruce S. Nathan
Lowenstein Sandler PC
1251 Avenue of the Americas, 18th Floor
New York, NY 10020
*Counsel to Trail Ridge Flatiron Fund*

Carole Neville
John Bicks
Sonnenschein Nath & Rosenthal LLP
1221 Avenue of the Americas
New York, NY 10020
*Counsel for Sonnenschein Defendants*

Merritt A. Pardini, Esq.
Katten Muchin Rosenman LLP
575 Madison Avenue
New York, NY 10022-2585

Paul D. Sinclair
Shughart Thomson & Kilroy
Twelve Wyandotte Plaza
120 West 12th Street
Kansas City, MO 64105-1929
*Counsel to Trail Ridge Flatiron Fund*

H. Jeffrey Schwartz
Elise Scherr Frejka
30 Rockefeller Plaza
New York, NY 10112
*Counsel for Debtors and Debtors-in-Possession*

P. Gregory Schwed
Christian D. Carbone
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154
*Counsel for Highgate Partners LP*