PHILLIP S. WISE, CONSULTANT
ASSISTANT DIRECTOR (RETIRED)
UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS
140 PARHAM RD. N.W., MILLEDGEVILLE, GEORGIA 31061
TELEPHONE: 478-968-7907    FAX: 478-968-0493    EMAIL: PSWISE@MSN.COM

Reference:   Mr. Samuel Israel III, Docket Number 05 CR 1039-01(CM)

STATE OF GEORGIA        )
                        ) ss.:
COUNTY OF BALDWIN       )

PHILLIP S. WISE, being duly sworn, deposes and says:

1.    From 1999 until my retirement in February 2002, I served as the Assistant Director of the Federal Bureau of Prisons, with responsibility for health care. In this position, I was responsible for the formulation and implementation of health care policies for the Bureau of Prisons, and served as a member of the Executive Staff, which is the senior policy making body of the Bureau. For three years prior to that, I was the Warden of the Federal Medical Center (of the Federal Bureau of Prisons) at Rochester, Minnesota, where I had overall operational responsibility for the operation of that facility. While in this position, I was appointed to the Senior Executive Service of the U.S. Government. For two years prior to that, I was the Warden of the Federal Prison Camp at Alderson, West Virginia. My career with the Federal Bureau of Prisons dates back to 1977, and my assignments with the Bureau of Prisons include service in Federal Penitentiaries, Federal Prison Camps, Federal Medical Centers, and Federal Correctional Institutions. I am fully familiar with the health care and inmate management policies of the Bureau of Prisons. From December 2003 through September 2005, I was employed as Vice President of a national firm that provides specialty medical care to inmates in federal and private correctional facilities. A copy of my relevant

1

work experience is attached (Attachment 1).

2.  I was contacted by Mr. Barry Bohrer, an attorney for Mr. Samuel Israel III, who asked that I review documents related to the health care requirements of Mr. Israel and address issues related to his potential incarceration. This statement is prepared in response to that request.

3.  In preparation for this statement, I have reviewed the following Program Statements of the Federal Bureau of Prisons: Security Designations Manual; Patient Care (1/15/2005), Medical Designations and Referral Services for Federal Prisoners (1/15/2005), Health Services Administration (1/15/2005), Pharmacy Services (1/15/2005); the National Formulary of the Federal Bureau of Prisons for 2007; and the website for the Federal Bureau of Prisons (www.bop.gov). I have also reviewed medical evaluations provided by Mr. Bohrer, a listing of which is included as Attachment 2, the Pre-Sentence Investigation Report prepared by Diane M. Plummer, USPO (revised 2/27/08) and a letter of March 4, 2008 to Ms. Plummer, USPO, from Mr. Bohrer outlining objections to the Pre-Sentence Investigation Report.

4.  From the records available, it appears that Mr. Israel has a long and significant history of neck and spine surgery to address ongoing degenerative conditions including

**REDACTED**

2

5.  Mr. Israel currently takes **REDACTED**

6.  In my opinion, based on my review of the medical records, four concerns arise should Mr. Israel receive a period of incarceration, and particularly in the event that Mr. Israel is immediately remanded to the custody of the United States Marshals Service:

   a.  First, conditions of confinement may exacerbate his neck and back pain;

   b.  Second, his current pain management regimen is likely to be changed;

   c.  Third, his regimen of care may be disrupted during transportation from one facility to another; and

   d.  Fourth, his medical requirements may cause his placement in a more secure facility than for which would otherwise qualify.

7.  My opinion is based on the following:

   a.  In a correctional environment, simple choices that may affect back and neck pain, such as mattresses and bedding, shoes, and chairs are extremely limited. Movement throughout the facility for meals, laundry, bathrooms, health care and visiting is generally required (unless an individual is placed on inpatient status), and often involves walking considerable distances or climbing stairs.

   b.  During transportation between facilities, or outside a secure facility for medical appointments, for example, Mr. Israel will likely be placed in both handcuffs and leg irons, making mobility challenging. These conditions are uncomfortable for an unhealthy inmate, and may exacerbate the condition of an inmate who suffers from significant back and neck pain. Accommodations that might be available in the community are not likely

3

available in a correctional setting.

  c. As may be expected, the use of **REDACTED** Drug seeking inmates are likely to apply significant pressure to fellow inmates with legitimate prescriptions for drugs like these, which are seen as highly desirable, and can place those inmates at risk. Other significant pain medications, **REDACTED** may subject an inmate to the same pressures and risks. For this reason, it is likely that attempts to control Mr. Israel's chronic and breakthrough pain may focus on medications less likely to place him in a vulnerable position. As a result, Mr. Israel's pain may not be sufficiently treated.

  d. During transportation, full inmate medical records may not be immediately available. As a result, interruptions in medications or medical treatment are fairly common during these periods. Such disruptions are, in my experience, much more likely if an inmate is housed in a non-federal facility such as a county jail or contract facility during transportation between federal facilities.

  e. If Mr. Israel is immediately remanded following sentencing, he will be placed in the custody of the U.S. Marshals prior to designation of a facility by the Bureau of Prisons for service of his sentence. In that event, Mr. Israel will remain in the custody of the U.S. Marshals Service until his arrival at the facility ultimately designated for him by the Bureau. Thus, while awaiting designation he may or may not be housed in a Bureau of Prisons facility. Similarly, if transported to the designated facility by the U.S. Marshals, he may be housed in any number of facilities, which likely would not be Bureau of Prisons facilities, en route. County jails and contract facilities that house U.S. Marshals prisoners are not bound by the health care policies of the Bureau of Prisons, and often provide minimal

medical care, based on the transient nature of their primary populations. In such a setting, and with movement from facility to facility en route to his designated facility, there is a strong likelihood that Mr. Israel's current medical regimen, a particularly the pain medication, will be disrupted.

    f. The Bureau of Prisons now classifies its institutions based on the level of medical care each is capable of providing. This classification is based in part on the resources available in the surrounding community and in part on the staffing of the medical component of that facility. Each facility is assigned a care level (I-IV), with care level I providing the lowest level of medical care and generally housing "healthy" inmates, and Level IV providing the highest level of care to include inpatient beds and 24-hour nursing care. A review of Mr. Israel's medical requirements suggests that if incarcerated, he would be placed at a care level IV facility. This is based on his need for a pain management specialist, **REDACTED** requiring sub-specialists. The initiation of most of the pain medications that might be considered for Mr. Israel is restricted by the National Formulary of the Bureau of Prisons to Care Level IV facilities. Further, guidelines in use by the Bureau of Prisons indicate that inmates with "chronic pain requiring invasive/special procedures or pain-specialist management" are properly classified for Care Level IV facilities. These classifications have no application to the U.S. Marshal's Service, and would not apply to Mr. Israel if he is in the custody of the U.S. Marshal's Service prior to his designation to, and arrival at, a Bureau of Prisons facility.

   8. The Bureau of Prisons currently operates six Care Level IV facilities:

    a. Federal Medical Center, Devens, Massachusetts;

    b. Federal Medical Center, Butner, North Carolina;

  c. Federal Medical Center, Lexington, Kentucky;

  d. Federal Medical Center, Carswell, Texas (women only);

  e. Federal Medical Center, Rochester Minnesota;

  f. U.S. Medical Center for Federal Prisoners, Springfield, Missouri.

 9. Each of these facilities is considered "administrative," meaning that each has multiple missions and houses inmates of multiple security levels. Thus, lower security level inmates in these facilities are subjected to more rigorous security procedures than they would experience in a less secure settings for which they might otherwise qualify. In addition, they live and interact with inmates with significantly greater histories of criminal activity, including histories of violence.

 10. Based on the nature of his offense, his minimal criminal history, no history of violence or escape, and his pre-commitment status, the place of designation for Mr. Israel is likely to depend primarily on his sentence length. The policy of the Bureau of Prisons is to place inmates who initially have more than 10 years remaining to serve in at least a Low Security Level facility, those with 20 years remaining to serve in a Medium Security level facility, and those with greater than 30 years remaining to serve in a High Security facility, such as a United States Penitentiary.

_____<br>
PHILLIP S. WISE

Sworn to before me this
___ day of March, 2008
my commission expires the 9th day of July 2011.

_____
Notary Public

# ATTACHMENT I

# Phillip Steven Wise
140 Parham Rd. N.W.
Milledgeville, Georgia 31061
Phone: 478-968-7907
Cell Phone: 478-456-4904
Email: pswise@msn.com

## PERSONAL INFORMATION

Date and place of birth: December 2, 1951, Atlanta, Georgia
Family: Married to Dianne Wise since December 28, 1974
    One son, Joshua, former Petty Officer aboard the USS Avenger, MCM-1,
Hobbies/interests: Running, bicycling, cooking, traveling, gardening

## EDUCATION

High School:
    Danbury High School
    Danbury, Connecticut
    Graduated June 1969

Undergraduate Studies:
    Emory University
    Atlanta, Georgia
    Enrolled September 1969
    Awarded BA (major in Psychology) August 1972
    Awards: Phi Beta Kappa

Graduate School
    University of Minnesota
    Center for Research in Human Learning
    September 1972 through May 1973

    Georgia State University
    School of Education
    Enrolled 1975
    Awarded M.Ed. (Counseling and Psychological Services) March 1977

## RELEVANT EMPLOYMENT

**Bureau of Prisons**
    **Psychology Technician**
        U.S. Penitentiary
        Atlanta, Georgia
        March 1977-September 1978
        Major Duties: Administration of psychological assessment instruments; collection, analysis and organization of material for completion of forensic evaluations; group and individual therapy; development and delivery of counselor training; general correctional duties.

8

**Case Manager**
U.S. Penitentiary
Atlanta, Georgia
September 1978-February 1981
Major Duties: Overall management of the cases of 250 federal convicted felons, to include reception; coordination with courts and pre-trial services; sentence monitoring; development of individual program plans; release planning; coordination with post release services.

**Case management Coordinator**
Federal Correctional Institution
El Reno, Oklahoma
February 1981- February 1983
Major Duties: Coordination of activities of 8 case managers, development and implementation of local policy regarding inmate management; advise Warden about case management policy; coordinate institution activities with U.S. Parole Commission; coordinate activities related to Interstate Agreement on Detainers, International transfer of inmates, and extradition issues.

**Drug Abuse Treatment Unit Manager**
Federal Correctional Institution
Fort Worth, Texas
February 1983-October 1983
Major duties: Management of a comprehensive, residential drug treatment unit for 200 convicted federal felons; supervision of clinical psychologist, case managers, counselors, correctional officers and support staff; general correctional responsibilities.

**Instructor**
Bureau of Prisons Staff Training Academy
Federal Law Enforcement Training Center (FLETC)
Brunswick, Georgia
October 1983-April 1985
Major duties: Instructing new Bureau of Prisons employees in firearms, self-defense, and policy; development and implementation of practical exercises for new employees; development of computer based instruction programs; firearms instruction for staff from other federal law enforcement agencies.

**Assistant Regional Administrator for Correctional Programs**
North Central Regional Office
Bureau of Prisons
Kansas City, Missouri
April 1985 – October 1986
Major Duties: Assisted the Regional Administrator in the evaluation of correctional programs in the 15 correctional facilities located within the North Central Region; management of inmate pay programs within the region; coordination of activities of the U.S. Parole Commission within the region.

**Regional Administrator, Correctional Programs**
North Central Regional Office
Bureau of Prisons
Kansas City, Missouri
October 1986 – April 1988
Major Duties: Provided oversight of correctional programs (including unit management, case management, inmate performance pay, monitoring of disruptive groups, placement of newly sentenced inmates,

separation of gang members, placement of federal inmates in state systems and receipt of state inmates in federal facilities), coordination of parole hearings and releases, coordination of release planning and coordination with offices of U.S. Probation, monitoring of interstate agreements on detainer, and coordination of movement of inmates.

**Executive Assistant, Correctional Programs Division**
Central Office (Headquarters)
Bureau of Prisons
Washington, D.C.
April 1988 – May 1989
Major Duties: Provided administrative assistance to the Assistant Director of the Bureau of Prisons who was responsible for all correctional programs, including community corrections, case management, unit management, chaplaincy programs, psychology services, and custody and security. Managed transfer of inmates to and from other countries, working with the Department of State to administer international treaties, managed covert operations in conjunction with the Office of Enforcement Operations, Department of Justice.

**National Administrator, Correctional Programs Branch**
Central Office (Headquarters)
Bureau of Prisons
Washington, D.C.
May 1989 – June 1990
Major Duties: Responsible for development of agency wide policy governing correctional programs, including case management, unit management, and management of disruptive groups. Oversight of programs agency wide in those areas, including a program of regular institution audits. Management of national program for the placement of Mariel Cubans and repatriation of those eligible, in conjunction with the Department of Justice, Department of State, Immigration and Naturalization Service and St. Elizabeth's Hospital. Participation in the development of administration social policy, including sentencing, legislative initiatives, and probation and parole policies.

**Executive Associate Warden**
Federal Correctional Institution
Lexington, Kentucky
June 1990 – July 1991
Major Duties: Responsible for all operational areas of a major correctional facility with both male and female populations and a significant medical mission. Included direct responsibility for budget development and execution, facilities management, food service, health services, personnel, and training.

**Deputy Assistant Director**
Bureau of Prisons
Central Office (Headquarters)
Washington, D.C.
July 1991 – June 1994
Major Duties: Responsible for policy development and oversight of agency activities in information management and technology, research and evaluation, security technology, and international affairs. Oversaw operations of agency information management development, including expansion of legacy system and development of agency wide local and wide area networks, the migration to distributed data bases, and integration of systems with other components of the criminal justice system. Worked collaboratively with U.S. Marshal's Service and Immigration and Naturalization Service to implement a joint automated booking system as a demonstration project in the Vice President's initiative to reinvent government. Participated regularly with Department of Justice and other agency officials in the development of administration policies for the Department and White House regarding criminal justice issues, including sentencing and alternatives to

incarceration, probation and parole policies, legislative initiatives and assessment of impact of legislative proposals. Participated in briefings of members of Congress, federal judges, and administration officials. Coordinated international assistance in corrections with Department of State and Department of Justice.

**Warden**
Federal Prison Camp
Alderson, West Virginia
June 1994 – September 1996
Major Duties: Responsible for the overall administration of a major prison camp for federal female offenders, including all operational areas such as custody, financial management with a budget of $20 million, facilities management, personnel and food service, as well as program areas such as unit management, case management, chaplaincy and psychology services, education, drug abuse treatment and vocational training programs. Of particular note were programs specifically designed for pregnancy, childbirth, and parenting.

**Warden**
Federal Medical Center for Prisoners
Rochester, Minnesota
September 1996 – March 1999
Major Duties: Responsible for the overall administration of a complex medical facility for federal prisoners, including the highest levels of inmate custody, all operational areas and program areas, an annual budget of $45 million, and management of contractual relationship with the Mayo Clinic. Management of medical and surgical inpatient and outpatient programs and populations, and in-patient, out patient and forensic mental health programs and populations. Responsible for ensuring compliance with all federal health care laws and regulations, ethical medical decision making, and accreditation by external health care review organizations. Responsible for coordination of activities with other components of state and federal criminal justice components, including courts, probation and parole agencies, local, state and federal law enforcement organizations and other Department of Justice components. Participated in the development of health care policies for the Bureau of Prisons. Member of the U.S. Senior Executive Service.

**Assistant Director of the Federal Bureau of Prisons with responsibility for Health Services Division**

Federal Bureau of Prisons
Central Office (Headquarters)
Washington, D.C.
March 1999 – February 2, 2002
Major Duties: Responsible for agency wide programs in health services, food service, and safety, including policy development, integration of services across 93 institutions and 7 major medical referral centers, and oversight of those programs in each facility. Management and oversight of $500 million annual health services/food service budget. Participate as one of 15 members of the agency Executive Staff that makes major agency policy and personnel decisions and collectively directs operations of the agency components. Provide briefings to members of Congress and testimony at relevant Congressional hearings, provide briefings to senior administration officials and participate in the development of national social policies related to corrections, correctional health care, public health, post release services, and legislative initiatives. Member of the U.S. Senior Executive Service.

11

**Medical Development International**
    Vice President, Client Services
    822 Highway A1A North, Suite 310
    Ponte Vedra Beach, Florida 32082
    December 1, 2003 to September 30, 2005

Medical Development International (MDI) is a medical service organization that arranges for specialty health care for inmates in federal, state, local, and private correctional facilities. Through contractual arrangements with providers and correctional facilities, MDI assembles provider networks, schedules appointments, adjudicates bills and provides fund control assistance. Major duties include participating in development of company policies and strategies, oversight of operations, and intervention on behalf of clients in contract management.

**Consultant**
    140 Parham Rd. N.W.
    Milledgeville, Georgia 31061
    478-968-7907
    September 30, 2005 to Present

Currently serve as consultant regarding prison health care with focus on Federal Bureau of Prisons. I have provided declarations, affidavits and/or testified in over 30 cases, generally during the sentencing phase, in the following Federal Judicial Districts: Central District of California, Eastern District of California, Southern District of New York, Maryland, Southern District of Florida, Colorado, Eastern District of Kentucky, District of Puerto Rico, Eastern District of Pennsylvania, Western District of Arkansas, Northern District of Ohio, and Middle District of Tennessee.

# ATTACHMENT II

## Medical Documents Reviewed

1. Medical Summary by Howard B. Eison, M.D., FCCP, FACP, dated January 29, 2008;
2. July 10, 2006 Letter of Dr. Howard B. Eison, M.D.
3. Compilation of Records related to Mr. Israel's Back and Neck Condition
4. Records of Dr. Suelane DoOuro, M.D.
5. February 29, 1008 Summary of Dr. Carol J. Weiss, M.D.