UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

    - against -

SAMUEL ISRAEL III,

         Defendant.

05 CR 1039 (CM)

---

**APPENDIX A
TO SENTENCING MEMORANDUM SUBMITTED
ON BEHALF OF SAMUEL ISRAEL III TO
(LETTERS)**

---

**REDACTED**

# TABLE OF CONTENTS

March 1, 2008 Letter of Ann R. Israel.................................................................................Tab A

March 6, 2008 Letter of Lawrence J. Israel Jr. .................................................................Tab B

Undated Letter of Robert Israel ........................................................................................Tab C

March 4, 2008 Letter of Earl Leach .................................................................................Tab D

March 6, 2008 Letter of Michael Levine .........................................................................Tab E

January 2, 2006 Letter of Rebecca R. Landry .................................................................Tab F

December 19, 2005 Letter of Roger J. Weiss...................................................................Tab G

December 29, 2005 Letter of Rabbi David S. Goldstein .................................................Tab H

December 17, 2005 Letter of Peck Hayne ........................................................................Tab I

March 21, 2006 Letter of Bill Kilmer ..............................................................................Tab J

January 8, 2006 Letter of Pam Hayne .............................................................................Tab K

December 22, 2005 Letter of E.V. Benjamin III .............................................................Tab L

December 27, 2005 Letter of J. Kenneth Saer ................................................................Tab M

March 1, 2006 Letter of Betsy Nalty ...............................................................................Tab N

January 9, 2006 Letter of John M. Damgard ..................................................................Tab O

# EXHIBIT A

The Honorable Judge Colleen McMahon,

I write this letter to ask you to have mercy on my son Sam. Your honor, even good people make terrible mistakes in their lives and Sam is a good, compassionate human being.

From the time he was young, Sam cared for and tried to help both animals and other human beings. It was Sam who brought home and cared for stray and wounded animals; it was Sam who stopped to help people in trouble or hurt in accidents; it was Sam who helped care for me when I had kidney cancer and his brother when he was badly burned and it was Sam who visited New Orleans and helped me care for my mother when she was ill and dying.

Sam's volunteer service also reflected his desire to help others. In New Orleans he helped tutor kids in a program similar to head start at Trinity School, and later read to children in the pediatric program at Mount Sinai Medical Center. He loves coaching youngsters in sports and it is my understanding that he was involved with child protective services after I went back to New Orleans. He is a great and loving father to his son Jake.

I am not exactly sure what led to the trouble Sam is now in. Perhaps he put too much trust in those around him. Perhaps it was inattention to detail- a fault Sam has had since he was young. Perhaps it was a desire to win his father's love and admiration by becoming a huge success on Wall Street. Perhaps it was an addiction to opiates from numerous back operations or a combination of all of these that led him to do what he did. Whatever the reasons, this felony is an anomaly in his life not an indication of who he is as a person.

Again, I ask you to show mercy to my son when sentencing him in April.

Respectfully submitted,

Ann R. Israel
March 1, 2008

# EXHIBIT B

Lawrence J. Israel Jr.
1920 Greenview
Northbrook, Ill. 60062

March 6, 2008

Dear Judge McMahon,

Sam Israel is my brother and best friend. Our age difference is a year and a half, so
we have been close, more like peers than some brothers who have a wider age
disparity.
We went to Trinity Episcopal School in New Orleans together where Sam and I went
to church every weekday, so I believe my brothers faith and kindness has been a
big part of his life since childhood. During Mardi Gras five or six years ago Sam
camped on the street all night saving a place for my kids to watch the parades. A
few minutes before the parade came he witnessed a couple of young African
American children being pushed and shoved by the crowd. He gave these kids the
spot up front , away from the melee that is mardi gras, without hesitation and by
default his own nephews were subjugated to a less prominent position. When they
asked why he gave other people their spots, he told them that these kids looked
like the parade throws would mean a lot more to them and that they will still be
able to see just fine, I could relate stories of how when my family passed a flipped
over car in a desolate area that Sam insisted we stop and ran to help the
inhabitants without hesitation or fear for his own safety.. Sam cares about others.
He has coached in children's baseball , soccer, and basketball leagues and only
stopped when his physical infirmities prevented him from doing so any longer. He
has done community volunteer work in New Orleans as a youngster helping
disadvantaged kids and in New York as a volunteer at Mt. Sinai hospital. His love of
people and animals is legendary in our family. He has raised everything from Dogs
to Alligators with great care and patience.

In my mind there can only be a couple of reasons for his crimes. It was never easy
growing up an Israel. My family has achieved success of titanic proportion in both
their businesses and communities. For many generations my family has been
known as good citizens. The history of our family has been one of charitable
contribution at many Hospitals, Universities, and community service. We all felt the
pressure to succeed, perhaps Sam the most as he was named after our
Grandfather. What the perception of our family was to the outside world, and
reality were two different things.:

## REDACTED

After my
brother started having physical problems which included spine, back, neck, and
structural deterioration, he was operated on numerous times, a couple of the life
threatening variety. Subsequently, he became addicted to various prescription
drugs and went to rehabilitation to rid himself of those addictions. The trauma,
drug use, rehabilitation, and anesthesia involved with the operations definitely
played a role in Sams' troubles. His wife divorcing him at the same time added
much distress and pressure that seems to have sent him over the edge and to do
things he would never have done had he been healthy. My brother has harmed
many people in our family and extended family by his actions. I do feel that over
the last couple of years Sam has become the Sam we all know. He has shown
nothing but remorse and has taken responsibility for what he did. The biggest
ramification of this is the effect on Sam's son. To lose his father for an extended
period would be devastating. Saint Ives , the patron saint of lawyers and
abandoned children, might consider the effect of perpetual incarceration an

abandonment, albeit involuntary. My brother has never physically harmed any person. Sam stole money from a group of accredited investors, the definition being any person with one million dollars of net worth or income over $250,000. He wasn't stealing the pensions funds of working people or the retirement savings of ordinary citizens. I know Sam did not do this to enrich himself. If you knew Sam you would realize he is much more likely to give a homeless person a dollar than to take one from anyone. I feel the pressure to succeed caused him to falsify returns. I can honestly say my brother has never intentionally hurt anyone in his life and yet by doing what he did he hurt more people than if he had just admitted his failure. I do know my brother could never have done this on his own, but he insists on taking full responsibility for it.

Sam has committed a crime and it is your job to punish him. The only person that holds that power is you. Please consider this decision with a merciful heart and may God give you the wisdom of the fitting punishment.

Sincerely,

Larry Israel Jr.

# EXHIBIT C

Judge Colleen Mcmahon

U.S. District Judge

Southern District N.Y.


RE: Sam Israel's sentencing


Dear Judge:


I am Robert Israel, the younger brother of Sam Israel. I live in New Orleans, Louisiana and have two boys that are nephews to Sam. I moved from New York after I graduated from college primarily because I felt that the majority of people in New York were more concerned about how much money one had rather than what kind of person one was. Here in New Orleans, especially after Hurricane Katrina, we are all equals trying to recover and help one another restore our city and our lives. I sincerely believe that the pressure to make a lot of money in the New York investment environment had a great deal to do with Sam's present situation. It is hard for me to understand it otherwise, as growing up here in New Orleans he cared about helping others above all. Sam and I used to help underprivileged children learn to read Wednesdays after school at the Christ Church on St. Charles Avenue. We used to go to Boyscouts and get involved in community projects, such as food distribution and helping to refurbish homes in poor areas. Sam has one of the kindest hearts of anyone I know. I realize that he has to be punished for breaking the law; however, I believe that in this humbling ordeal he has turned his life around. Sam will be a much more productive member to his community and his family on the outside world rather than being incarcerated. Since his hearing Sam has once turned his focus to what matters most, becoming involved again in helping others and spending quality time with his children. Please consider this before you make your decision in sentencing my brother. I appreciate your taking the time to read this letter.


Robert Israel

# EXHIBIT D

The Honorable Colleen McMahon                    March 4, 2008
United States District Court

Your honor,
 The purpose of this letter is to provide a character reference for Mr. Samuel Israel whom I have
known as a classmate and friend for over 30 years.

    I first met Sam when he began attending The Hackley School in 1975. We quickly became
friends enjoying many mutual interests including our passion for sports, education and life. Sam
was well liked by all those who knew him and his passion for life was evident. We embraced
these special years and our friendship endured the ups and downs of life through out the years.
We went on to college, both becoming spouses and family men. I have remained close with his
parents, Lawrence and Anne Israel whom are like parents to me.

As a businessman, Sam was a hard-working and highly committed to his work.
 I believe that his early successes on Wall Street will attest to that fact that he was well respected
and committed to both his employers as well as clients. I know in my heart that whatever Sam did
he did with no malice intended. Unfortunately, sometimes even our best intentions may lead us
awry.

As a friend, Sam was always a standout. One could not have a better friend. He remains loyal,
honest, considerate, and a supportive individual who has the ability to see and understand things
from another person's perspective. Sam often introduced me as his brother, which always raised
the eyebrows of many of his business associates, due to the fact that I' am African American. But
in fact, through all of our 30 years together, he truly and always treated me as a brother, often
better than his own real brothers, Larry and Robert who I also consider my family.

The circumstances which bring us to this point in time, today, in my opinion, are directly related
to his injuries regarding his back and shoulder, which he suffered playing football alongside the
rest of us in high school. Despite the pain and agony he suffered, Sam always managed to not to
let the rest of the team down and was always there for us later in life, just as he did when we
were kids.

But as we got older, following, surgery after surgery, I notice the pain and the prescriptions soon
began to take their toll on my friend. He was never the same.
If fact, I truly believe that it was a result of Sam's ambition to continue help others, achieve their
own dreams and desires, may have been that which caused him to over promise, over
compensate and under perform.

It's heartbreaking for me to even imagine what others must have suffered and lost by the failure
of Bayou, however, I know in my heart, ... I know in my "gut" that Sam would never purposely or
intentionally cause harm to others. Even if Sam "crossed over" the line, I know in my heart he did
it with the intent of eventually making things right.

I wish I was articulate enough, to share with you in words the true good nature of Sam Israel. If
only you could have seen us laugh together and cry together, and fight together would you have
some small insight the true goodness of his heart.

I beg the court to consider those of us who are his family and friends, to understand that
we too have suffered, along with those Bayou investors. We love Sam, I love Sam and I hope that
our pleas of mercy won't go unheard.


Signed,
Earl Leach

*Earl S. Leach*

# EXHIBIT E

Michael Levine
4 International Drive
Rye Brook, NY  10573

March 6, 2008

The Honorable Colleen McMahon
United States District Judge
Court of Appeals for the Second Circuit
500 Pearl Street
New York, NY  10007

Dear Judge McMahon,

  I have known Sam Israel for 15+ years and consider him my best friend.  Over the course of our friendship he has served many roles, as mentor, confidant, and a source of moral support and inspiration.

  I met Sam not long after college, when I was a junior broker from a small firm. Despite the fact that I was of relatively small stature on Wall Street, he always went out of his way to answer any questions, no matter how sophomoric they may have been.  In retrospect, I'm sure many of these questions would have been met with a more than dismissive attitude by virtually any other client I dealt with.  On most occasions he went beyond the small scope of my inquiries and helped me to understand the "bigger picture," walking me through the next step, and often supplying reading materials from his own resources.  Whatever success I have in this business, I owe a huge debt of gratitude to Sam, which I doubt I will ever be able to repay.

  Through the years our mentor-student relationship evolved into a close friendship, which I value more now than ever.  Over the past several years he has helped me in my personal life in ways I could never have imagined.  He has been the driving force in helping me achieve sobriety.  I had known he had been sober for many years when he encouraged and ultimately brought me to numerous AA meetings.  During this second and infinitely more important stage of tutelage, he patiently walked me through the program and the twelve steps.  I owe my life to him for this, a fact I will never forget.

  Sam, as any of us, is far from perfect.  In the very early days of his efforts to launch Bayou Fund I would often sit with him in his basement and watch him tirelessly work to realize his longtime dream of running his own fund.  I had seen him work with this same dedication for previous employers.  As time went by, his growing dream became too much for one man, and he was put into the position of having to trust others, supposedly experts, in the many areas that are required to run a successful hedge fund. This as it turned out, was the crack in the foundation of all he worked so hard to achieve. I never had a very good feeling about those "experts" he brought in.  I expressed my

Judge Colleen McMahon                    2                    March 6, 2008

concerns to Sam, but as I will always regret, I did not do so strongly enough. Whether it would have made a difference would seem to be a moot point. He had reassured me that, though "quirky," these were people he could trust. As Bayou grew it became clear to me these people were shielding Sam from contact with many of his friends. This was a rather easy task, I would imagine, due to the fact that Sam was so often in extreme physical pain and was either preparing for, or recovering from major back surgery. The times I did manage to see him, usually by showing up at his doorstep, he was almost always in agony. I also learned that few if any of the numerous messages I had left for him were delivered. This, I came to realize, was because I was perceived by those around him as some sort of threat to their security. Please keep in mind that this perception was in spite of the fact that I had previously declined a job offer from Sam. I simply did not trust those who had encircled themselves around him.

Throughout Sam's trials and tribulations what has struck me, and what I most admire about him, is his devotion to his family. He is intensely concerned and devoted to his parents, as well as to his brothers, and most importantly to his children. In spite of his numerous health problems he coached his son's basketball team, and never missed a single game, that I am aware of, in which his son Jake has played.

Jake is a wonderful child who loves and reveres his father very much. Jake has displayed many of his dad's great qualities toward my own son, who is less than half his age, befriending him as Sam did me so many years ago. Jake has spent countless hours playing numerous games, showing uncommon patience and understanding for a thirteen year old interacting with a five year old.

I sincerely hope this letter gives some insight into Sam Israel as a person of character, a tremendous friend and mentor, and most importantly a family man.

Very truly yours,

**EXHIBIT F**

*REBECCA R. LANDRY*
*2334 MAGAZINE STREET*
*NEW ORLEANS, LA 70130*
*(504) 561-0082*

_____

January 2, 2006

To Whom It May Concern:

Samuel Israel is my first cousin. Our family has always been closely knit, and I have lived with my aunt and uncle, Sam's parents at different times in my life. Sam has always been very kind and loving, not only with his extended family, but particularly with our grandparents and his children. In my experience, he has been a good and fun parent. On numerous occasions Sam told me how he hated being away from his kids for any extended periods of time and that they were the most important things in his life. I ask you for leniency in Sam Israel's case, so that he does not have to be away from his children and the rest of his family, particularly his father whose health is failing, that he loves so much.

Sincerely,

Rebecca R. Landry

# EXHIBIT G

ROGER J. WEISS
73833 DESERT GARDEN TRAIL
PALM DESERT, CALIFORNIA 92260

TEL: 760-340-6593                                    FAX: 760-340-6597

Dec 19, 2005

To The Honorable Court

Dear Judge,

Samuel Israel will stand before you and
I write this letter on his behalf. In my long
career, I have taught law at the Stanford Law
school, practiced law in New York with Cleary
gottlieb & Hamilton and formed a successful
investment management by the name of Weiss, Peck
and Greer which I helped run for more then Thirty
years. In that career, as you can imagine,
there were many difficult, if not strange, moments
but none that I can remember which is more
suprising then having to write this letter.

I first met Sam in approximately 1975
when his father and mother moved to
Westchester county. They were members of a
distinguished and revered New Orleans family
my wife and I became great friends with
Sam's parents. As such I watched him grow up.
I was very positive about Sam; warm, generous,
fun loving, giving, a better than average

(over)

student, a good athlete and well rounded. I watched him thru high school, college and was able to observe his business career from approximately 1984 to 1993 or so since the firm at which he worked, an investment firm, "cleared" it business thru our firm. His conduct and ethics were exemplary. When in 2001 I was asked to become an investor in his fund, I thought enough of him to readily do so. The events have come to light this year, all of which I do not know for my information comes only from published material and not from him or his parents, are not only shocking to me, they are completely at odds with my knowledge of him. I know him to be a good father and loving son. How he could have breached a trust given to him is inexplicable to me. Having thought intensely about this, the only possible explanation that I find plausible is that the continuous and almost annual horrendous back operations that he has had to endure over the last decade, and the prescribed strong narcotics that he has had to take,

nxt

ROGER J. WEISS
73833 DESERT GARDEN TRAIL
PALM DESERT, CALIFORNIA 92260

TEL: 760-340-6593                                FAX: 760-340-6597

somehow triggered a switch That led him
to lose balance, judgment and an
understanding of wrong from right. I hope
you will explore this with him and his
counsel for in my eyes you have in front
of you a good person who always had time
to help a friend, the less fortunate and who
willingly gave of his time and money to help those
who needed it.

Even though I was an investor in Bayou
and got scorched by their actions, I want
you to know that the Sam Israel I have
always known is a good person — a very good
person and the acts he is in your court
room for are completely at odds with what I
believe his basic character to be. I hope you will
consider this when dealing with this
painful matter.

Thank you for your time and consideration.

Sincerely,
Roger J. Weiss.