# **EXHIBIT D**

WITNESS STATEMENT
IN SUPPORT OF AN APPLICATION FOR A RESTRAINT ORDER
(SECTION 41 PROCEEDS OF CRIME ACT 2002)

This statement consisting of: 11 pages each signed by me is true to the best of my knowledge and belief and I make it knowing that, if it is tendered in evidence, I shall be liable to prosecution if I have willfully stated anything which I know to be false or do not believe to be true.

Dated: 13/11/2007

Signature: *S R Annis*

---

IN THE CROWN COURT AT BLACKFRIARS                    No: PCA 2007/0003

IN THE MATTER OF
ROBERT BOOTH NICHOLS

AND

IN THE MATTER OF
THE PROCEEDS OF CRIME ACT 2002

---

WITNESS STATEMENT

I am, Stephen Robert ANNIS, a financial investigator accredited for this purpose by the Director of the Assets Recovery Agency stationed at Economic Crime Department, 21 New Street, London, EC2M 4TP, and **WILL SAY** as follows: -

I am duly authorized to make this witness statement on behalf of the Applicant, the Fraud Prosecution Service who acts on behalf of The Central Authority of the United States who requests the assistance of the appropriate authorities in the United Kingdom pursuant to the Treaty Between the Government of the United States of America and the Government of the

Signed *S R Annis*          1

Date 13/11/2007

United Kingdom of Great Britain and Northern Ireland on Mutual Legal Assistance in Criminal Matters. The United States Attorney for the Southern District of New York (the prosecutor) is investigating Robert Booth Nichols and others for violating United States criminal laws by engaging in a "prime bank" fraud scheme, and in connection with that enquiry has requested assistance with restraining funds which represent part of the proceeds of that fraudulent scheme, which are currently held in a UK bank account. The Proceeds of Crime Act 2002 (External Requests and Orders) Order 2005 makes provision under Part 2, Chapter 1, Section 7(2) for the Crown Court to give effect to external requests for Restraint. I make this witness statement in support of an application for a restraint order pursuant to section 41 of the Proceeds of Crime Act 2002.

Save as otherwise stated or where the context indicates otherwise, the statements of fact in this witness statement are from information supplied by the Central Authority of the United States. If a statement is a matter of information or belief, I shall indicate the source of that information or belief.

## SUMMARY OF INVESTIGATION AND CRIMINAL PROCEEDINGS

1. **Prime Bank Schemes**

2. The prosecutor is conducting an investigation into a "prime bank" scheme that involves the United States, Germany, Liechtenstein, Singapore, and the United Kingdom.

3. "Prime bank" schemes also referred to as "prime bank instrument" schemes or "high yield trading programs are essentially Ponzi schemes in which the perpetrators claim that a secret trading market exists among the world's top banks or "prime banks" to which the perpetrators have unique access. The "top" or "prime" banks purportedly trade some form of bank security such as Bank guarantees, notes, or debentures. Supposedly, these instruments can be bought at a discount and sold at a premium, yielding greater than market returns with no risk. In reality, no such instruments or market exists.

Signed... *S. R. Annis*

Date... 13/11/2007

2

4. Perpetrators often claim that only a few "traders" or "master commitment holders" are authorized to trade in these securities, which must be traded in large blocks, typically millions of dollars or more. Promoters represent that they have special access to trading programs and that potential investors, by pooling their funds with that of other investors, can participate in these programs. Promoters often tell potential investors that the programs participate in humanitarian causes and investors may participate in the programs only if they agree to give a share of the profits to the cause.

5. **The Bayou Investors Scheme**

6. Beginning at least in or about April 2004, Robert Booth Nichols held himself out as a financial consultant who had access to programs that have all of the hallmarks of fraudulent prime bank note programs as described above. Nichols introduced potential investors to a network of conspirator's known and unknown (hereafter referred to as "'Targets") who vouched for the programs' legitimacy and assisted him in conning investors into investing in them. Targets attempted to induce at least one group of investors (hereafter the "Bayou Investors") to invest over $150 million in these programs.

7. The Bayou Investors are investors in the following hedge funds (hereafter "Bayou" or the "Bayou" funds):
   a. Bayou Fund LLC,
   b. Bayou Accredited Fund, LLC,
   c. Bayou Affiliates Fund, LLC,
   d. Bayou No Leverage Fund, LLC, and
   e. Bayou Superfund, LLC
   f. Bayou Fund, Ltd.,
   g. Bayou Offshore Master Fund, Ltd.,
   h. Bayou Offshore Fund A, Ltd.,
   i. Bayou Offshore Fund El, Ltd.,

Signed.... *S. R. Annis*

3

Date.... 13/11/2007

    j. Bayou Offshore Fund C, Ltd.,

    k. Bayou Offshore Fund D, Ltd.,

    l. Bayou Offshore Fund E, Ltd., and

    m. Bayou Offshore Fund F, Ltd.

8. Samuel Israel, III, managed these funds through Bayou Management, LLC, located in Stamford, Connecticut. In the spring of 2004, Nichols convinced Israel that programs as described above actually existed through which the Bayou Investors could earn fantastic rates of return if Bayou invested at least $100 million. Nichols represented that he did not control or manage the programs but had a working relationship with the program managers and could place Bayou's manager in contact with them. Nichols told Israel that the programs worked by placing the funds in a "non-depletion" account: which enabled other people to borrow money against the account but prevented anyone from actually taking money out of the account. Nichols also represented that the account would be in Israel's name and that Israel would maintain control over the account.

9. In early April 2004, Israel traveled to London at Nichol's request, and met with two Targets who assured Israel that the programs were real and safe. Within days, Israel signed an agreement to invest $150 million in a program administered through an entity known as the Humanitarian Coalition Aid Foundation ('HCAF') based in London. Between 13th and 19th April 2004, at Nichol's direction, over $150 million was transferred from Bayou accounts at Citibank in the United States to account #82596611 at Barclays Bank in London in the name of HCAF.

10. Several weeks later, Nichols notified Israel that the investment did not materialize but that Israel could still successfully invest in the programs. Nichols told Israel that to execute the investment; the funds held in the HCAF account at Barclays Bank would have to be transferred to a German bank. Shortly after this conversation, the approximately $150 million was transferred back to the U.S. Bayou Citibank accounts.

Signed.....*S. L. Chris*.....      4

Date......13/11/2007......

On 8th July 2004, $120 million was transferred from U.S. Bayou Citibank accounts to USD account #8660667-196 at Deutsche Postbank in Hamburg, Germany, in Israel's name (hereafter "the Israel Postbank account")

11. Nichols told Israel that he needed a short-term loan and would repay the money with his share of the extraordinary profits they were about to receive from the imminent investment in the programs. Nichols then provided Israel with instructions to transfer the $10 million to four separate banks in Germany, Liechtenstein, Singapore, and the United Kingdom. On July 19, 2004, Israel transferred $10 million out of the Israel Postbank account to the following four separate accounts, all in the name of or controlled by Nichols:
    a. Deutsche Postbank, USD account #8660669-198 [$1 million] held in the name Robert B Nichols;
    b. Centrum Bank AG, Liechtenstein, USD account #504400/001.000.840 [$4 Million] held in the name Sunteleo Establishment;
    c. The Standard Charter Bank, Main Branch, Singapore, USD account #77-000-07862 [$2million] held in name Nichols Robert Booth Business; and
    d. HSBC Bank Plc, London, United Kingdom, USD account #57409731 [$3 Million], held in name Robert B and Ellen M Nichols.

12. On 10th August 2004, the $4Million in the Nichols Centrum Bank account was transferred back to the Israel Postbank account.

13. On 12th August 2004, the $4Million was transferred from the Israel Postbank account to the Nichols Postbank account.

14. On 25th August 2004, $500,000.00 was transferred from Nichols Postbank account to a second account at Postbank (Euro currency account) held in the names Robert Booth Nichols and Ellen Marie Nichols.

Signed...... *S. R. Anis*

5

Date...... 13/11/2007

15. On 6th October 2004, $4,499,977.33 was transferred out of the Nichols Postbank account to the Nichols HSBC account.

16. In addition, also on 6th October 2004, 406,859.88 Euros were transferred from the Nichols Postbank Euro account to the Nichols HSBC account.

17. In total around $8Million was laundered into the HSBC account controlled by Nichols and his spouse.

18. At about the same time, Targets introduced Israel to Walter Golan, whom Nichols and Targets advised were familiar with the programs. Golan vouched for the legitimacy of the programs and advised Israel that he would be assisting in the placement of the funds into a trading program through the Polaris Group, a company with which he was affiliated. In late August 2004, Golan instructed Israel to transfer the remaining $110 million out of the Israel Postbank account and into account #908161203 at Postbank in the name of the Polaris Group.

19. After the transfer to the Polaris Group account was completed, Golan transferred funds from the Polaris Group account into other accounts, including the following:
    (1) Postbank, account #80050555 [50 million Euros];
    (2) Raiffeisenbank, account #22671949 [60,000 Euros]; and
    (3) Kreissparkasse Hof, account #220568885 (and related account numbers 220568893 and 220571681) [90 million Euros].

20. After German law enforcement authorities commenced an investigation, Nichols directed Israel to transfer the funds from the Kreissparkasse account to account #XH032, a securities account at ODL Securities in London in the name of S. Israel III, and the Bayou Fund. Thereafter, on 19th October 2004, Israel transferred approximately $99,191,102

Signed... *S. R. Anis*       6

Date... 13/11/2007

from the ODL account to an account in the name of Majestic Capital Management at Wachovia National Bank in the United States (hereafter the 'Majestic Account").

21. Also in October 2004, when the profits from the programs failed to materialize, Nichols created and backdated a document to make it appear that the $10 million he received as a loan from Israel was payment for financial consulting services rendered.

22. In May 2005, the Arizona Attorney General's Office seized the funds in the Majestic Account as the proceeds of fraud and advised the United States Attorney's Office that it would relinquish the funds for federal forfeiture and return to the Bayou Investors upon production of evidence tracing the connection between the funds and the Bayou Investors. On 1st September 2005, the United States Attorney's Office commenced a non-conviction based in Rem proceeding to forfeit the funds in the Majestic Account as proceeds from the attempted fraud against the Bayou Investors.

23   **THE OFFENCES**

   a.   **18 U.S.C.& 1341. Frauds and swindles**

Whoever, having devised or intending to devise any scheme or artifice to Defraud, or for obtaining money or properly by means of false or fraudulent pretences, representations, or promises, for the purpose of executing such scheme or artifice or attempting so to do, [uses the mail], shall be   imprisoned for not more than 20 years . . . .

   b.   **18 U.S.C. & 1343. Fraud by wire, radio, or television**

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or properly by means of false or fraudulent pretences, representations, or promises, transmits or causes to be transmitted in interstate or foreign commerce [a wire communication] for the purpose of executing such scheme or artifice, shall be ... imprisoned for not more than 20 years

Signed... *[signature]* ......   7

Date.... 13/11/2007

c.  **18 U.S.C. & 371. Conspiracy to commit offence or to defraud United States**

If two or more persons conspire to commit any offence against the United States, and one or more of such persons do any act to effect the object of the conspiracy, each shall be . . . imprisoned for not more than five years....

23. **REALISABLE PROPERTY**

24. I have made enquiries into the financial affairs of the defendant and it is to my knowledge that: -

25. Robert Booth Nichols the defendant is a 64-year-old male born in USA on 3rd March 1943. The defendant has a home address of 528 Hakaka Place, Honolulu, Hawaii, 96816.

26. Robert Nichols uses the following postbox to communicate with Israel and various banking institutions, Box 10307, Kahala, Honolulu, Hawaii, 96816, USA.

27. During the period between August and October 2004 when the fraud was in progress Nichols used the following London address for banks to send faxed confirmations of money transfers; Royal Club Suite 759, The Grosvenor House, Park Lane, London. Fax Number 44-207-3998429.

28. Nichols holds a US Dollar account number 57409731, sort code 40-05-15 with HSBC Bank PLC, at 129 New Bond Street, London, W1A 2JA in the names Robert B. Nichols and Ellen M. Nichols (spouse). This account received around $8Million from the funds Nichols obtained from the Bayou Funds, which Israel was defrauded into transferring into the Postbank account in Germany. Documents have been made available by the US enquiry team, which show an audit trail for the funds leaving the US Citibank accounts of Bayou Management through various European Banks into the HSBC account. Enquiries

Signed... *S. R. Annis*   8

Date... 13/11/2007

with HSBC Bank PLC in April 2007 indicate the account is still in operation and has a substantial credit balance.

29. At the time of writing I am not aware of any further realisable assets held by Nichols in England or Wales

30. **EXTENT OF BENEFIT**

31. I believe that the defendant has benefited from his criminal conduct described above, in an amount of at least $120,000,000 (On 22nd October 2007 this represents approximately £58,860,000.00 using a mid market exchange rate of £1.00 = $2.03751 obtained from XE.Com, a currency conversion site on the internet) this figure relates to losses from the High Yield Investment scheme perpetrated by Nichols and others on Bayou Management. Of the $120,000.000 removed from the Citibank (USA) accounts of Bayou on 8th July 2004, $10,000,000 was then transferred into four accounts directly controlled by Nichols on 19th July 2004. $3,000,000 of these funds went directly into the UK HSBC account of Nichols and his spouse, with a further $4,499,977.33 and 406,859.88 Euros being transferred from the Deutsche Postbank accounts of Nichols on 6th October 2004 The US FBI enquiry into the defendant's criminality continues and it is possible further offences will come to light, which would increase his benefit.

32. As far as I am aware, no civil proceedings have been commenced in the UK on behalf of any person that might be said to have sustained loss arising out of the commission of the alleged offences.

33. On or about 3rd August 2007 U.S. District Court Judge Colleen McMahon signed a Third Preliminary Order for Forfeiture as to Specific Property, forfeiting to the United States the interests of the defendants Marino and Israel in the $1,053,604.13 transferred to the HSBC account, and all property traceable to such property (the HSBC funds), as proceeds of the Bayou fraud, pursuant to #981(a)(1)(C and 28 USC#2461(c).

Signed...... *S. R. Annis*     9

Date...... 13/11/2007

34. **RISK OF DISSIPATION**

35. The benefit revealed by documents provided by the United States Attorney for the Southern District of New York (the prosecutor) is $120,000,000. Due to the high value of the funds involved, and the likely substantial sentences, which would follow a successful prosecution in the USA. I believe that if restraint orders are not made there is a real risk that assets will be dissipated.

36. The defendant has shown he is capable of setting up and operating a large scale fraudulent enterprise, being capable of duping personnel at major financial institutions, disguising his audit trail, and arranging for funds to be sent to various offshore banking jurisdictions. The high value of funds ($120,000,000) fraudulently obtained makes it likely that substantial further funds have been misappropriated and have not been located at this time.

37. It is known that the defendant is domiciled outside of the UK at 528 Hakaka Place, Honolulu, Hawaii 96816. He has shown the capability to organize and carry out a major fraud utilizing many different Countries banking institutions to disguise the proceeds of the Fraud. If left unchecked this would ultimately result in funds being transferred beyond the reach of the jurisdiction of British and American courts. It is believed that if the funds and/or other goods identified in this statement are not restrained they will be realised and dissipated by either the defendant and or his associates/family members.

38. **RESTRAINT ORDERS SOUGHT**

39. I therefore seek Restraint Orders against **Robert Booth Nichols** and **Ellen M. Nichols**, in respect of the following property which, to the best of my ability, I am able to particularise as follows: -

40. All realisable property belonging to **Robert Booth Nichols and Ellen M. Nichols** situated in the United Kingdom, including, but not limited to the following:

Signed... *S. R. Chris*    10

Date... 13/11/2007

a) US Dollar account number 57409731, sort code 40-05-15 with HSBC Bank PLC, at 129 New Bond Street, London, W1A 2JA in the names Robert B. Nichols and Ellen M. Nichols, and the funds held therein.

b) A Restraint Order is also sought against **Ellen M. Nichols**, of 528 Hakaka Place, Honolulu, Hawaii 96816 in respect of the property identified in paragraph 40(a) above.

I believe that the facts stated in this witness statement are true.

(Signature).......... *S. R. Annis*

Name of Witness. STEPHEN R. ANNIS

Date..... 13/11/2007

Signed..... *S. R. Annis*                 11

Date..... 13/11/2007