USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/26/08

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

**MEMO ENDORSED**

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 25, 2008

[Handwritten endorsement: 11/24/08 Thank you for this letter, which turns out to be moot — motion for sanctions. If you want to make a motion — don't write me a letter.

Colleen McMahon]

**BY HAND**
Honorable Colleen McMahon
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: **U.S. v. Samuel Israel III**, 05 Cr. 1039 (CM)
**Bayou Management v. Robert B. Nichols, et al.**, 08 Civ. 6036 (CM)

Dear Judge McMahon:

The Government and counsel to Bayou Management jointly submit this letter concerning the failure of Petitioners/Defendants Robert B. Nichols and Ellen M. Nichols to produce by this past Friday, November 21, 2008, the documents in their possession, custody and control showing the disposition of the $10 million that Robert B. Nichols received from defendant Samuel Israel III, as directed by this Court during the conference held on November 14, 2008. In response to this Court's directive concerning tracing documents, the Nichols produced 20 pages of bank statements for a single HSBC bank account (the "HSBC Account Statements," attached hereto as Exhibit 1), enclosed with a letter from the Nichols's counsel purporting to be an "executive summary tracking the $10 million at issue in round numbers" ("The Tracing Letter," attached hereto as Exhibit 2). This production fails to comply with the Court's order. As set forth in further detail below, the Nichols have refused to produce responsive tracing documents in their custody and control, have failed to request relevant tracing documents for their own bank accounts, and have not produced documents sufficient to trace any of the $10 million dollars to the current location. Accordingly, as suggested by the Court at the November 14 conference, the Government and Bayou's counsel jointly request that an appropriate sanction be imposed on the Nichols.

The Nichols still have not produced critical tracing documents that the Nichols's counsel concedes are in the Nichols's custody and control. During a telephone call on November 21, the Nichols's counsel informed the Government and Bayou's counsel that Robert Nichols possesses in his apartment in London documents concerning the flow of the $10 million. According to the Nichols's counsel, however, Robert Nichols chose not to travel to his London apartment to obtain those responsive documents for production because he fears being arrested by UK

Hon. Colleen McMahon
November 25, 2008
Page 2 of 4

authorities. While Nichols's fear of criminal exposure may be rational, his obligation to comply with discovery requirements in these proceedings remain.

The Nichols also have failed to make a complete production of bank statements, copies of checks or wire transfers, and other related tracing documents for even their own bank accounts. During a telephone call on November 21, the Nichols's counsel confirmed that, except for the HSBC Account Statements, the Nichols have not made any efforts since discovery requests were issued in August 2008 to obtain responsive documentation from their banks. It is clear from the HSBC Account Statements that millions of dollars were transferred in and out of the HSBC bank account, presumably to and from other bank accounts. For example, $5 million was withdrawn from the HSBC bank account on December 7, 2004 without explanation and $5 million was deposited into the HSBC bank account on February 24, 2005. Yet the Nichols have not produced any bank statements other than for their HSBC account. Moreover, it is impossible to ascertain from the HSBC bank statements the recipient of listed financial transfers. The Nichols could have clarified the recipients of many transfers by producing other records from the same HSBC account, such as wire transfer records and copied checks, but they have not done so.

Similarly, although the Tracing Letter suggests that $2.5 million of the $10 million that Robert Nichols received from Israel was expended to purchase and make improvements on real property owned by a trust of which Robert Nichols is the sole beneficiary, the Nichols have produced no documents whatsoever concerning this property, or financial transactions made in connection with this property. The Tracing Letter does not even provide the address of this property, and the Nichols's counsel has supplemented the vague description of the property as "located outside of Prescott, Arizona" only by stating that it is known as "Coyote Gulch." These disclosures, which fail to include even the most basic legal description of the property, are insufficient to comply with the Court's order.

With respect to the purported "tracking" of the $10 million disclosed in the Tracing Letter, the Nichols's counsel merely made general allegations concerning the current location of the money, without specifying any of the transactions that moved the $10 million dollars from the accounts in which Robert Nichols first received the transfers from Israel to their current location. The Nichols have not disclosed what accounts the $10 million moved through, when transfers were made, what financial institutions were involved, or the names in which those accounts were held. Otherwise put, the purported "tracking" of the $10 million does not actually track any of the $10 million that Robert Nichols received, much less provide the information necessary to confirm the accuracy of the Nichols's allegations concerning the flow of the $10 million.

The Tracing Letter's conclusory assertions concerning the current location of the $10 million are inadequate to even determine where the Nichols are claiming the $10 million is located. As noted above, the Nichols did not disclose the location of the Arizona property. The other disclosures are similarly, and clearly intentionally, vague. For example, the Tracing Letter discloses a $1 million "personal loan to a long-term acquaintance" without identifying the name of the acquaintance and $1 million "lost by investing in a project to purchase and then resell gold bullion" without identifying who received the $1 million, or anything else about the project.

Most significantly, the Nichols's counsel disclosed for the first time in his November 21st letter that the Nichols "dispersed" $1.4 million to "third parties involved in obtaining Box No. 13302705; Serial No. C13330270; S.C. No. 3040-20; P.D. No. 844." The Nichols, however, have failed to identify these "third parties." Additionally, the HSBC bank statements produced by the Nichols do not show a $1.4 million withdrawal, and the Nichols did not produce any documents relating to that payment of $1.4 million. The Nichols's counsel have informed the Government and Bayou's counsel that the Nichols do have documents relating to this $1.4 million disbursement in Robert Nichols's London apartment, but that he refuses to retrieve these documents because he fears being arrested by UK authorities. The disclosure by the Nichols's counsel as to the existence of these documents is particularly disturbing because the Nichols and their counsel previously represented in the Nichols's written responses to discovery requests and other communications that the Nichols had produced all documents in their possession, custody and control concerning "the box" and any services purportedly performed for Israel. Specifically, in response to Bayou's request for all documents concerning "the box," the Nichols stated that "Defendants have produced all such documents and things." See Responses of Petitioners-Defendants to Plaintiff's First Request for the Production of Documents and Things, dated September 17, 2008, Responses to Request Nos. 30, 42 (attached hereto as Exhibit 3). The Nichols's counsel did not previously disclose the existence of these responsive documents in Nichols's London apartment, and none of those documents have been produced to date.

The Government and Bayou's counsel have conferred with the Nichols's counsel in an attempt to resolve these issues, but the Nichols's counsel have not yet produced any additional documents or information. During a call on Friday, November 21, the Nichols's counsel indicated that the Nichols would produce additional information and documentation on Monday, November 24. But the Nichols did not produce anything yesterday. Earlier today, the Nichols's counsel sent the Government and Bayou's counsel an email stating that the Nichols's counsel, who are flying to New York from Los Angeles, "now have in their possession some new documents and expect to get more from our clients very soon in response to discovery requests," and intend "to prepare a letter . . . that will address all of these issues and plans to send it to you later tonight or first thing tomorrow morning (depending on flight arrival time in NY)." It is unclear from that email when the Nichols intend to produce these additional documents other than "very soon," and whether they intend to fully comply with their discovery obligations by producing all outstanding responsive documents in their possession, custody and control. Given the short amount of time left for discovery and the clear deadline the Court set for production of these documents, we request the Court's intervention at this time.

The Government and counsel to Bayou Management jointly request that the Court sanction the Nichols for not complying with the Court's directive to produce all documents concerning transfers of the $10 million that Robert Nichols received from Israel. The Court was unambiguous that these disclosures must be sufficient to "follow the money." The Nichols's refusal to comply with this order was intentional and egregious, as set forth above. Accordingly, the Government and Bayou Management jointly request that the Nichols be precluded in the above captioned actions from making any factual assertions or arguments (i) concerning whether either Robert Nichols or Ellen Nichols transferred any portion of the $10 million that they received from Israel to conceal or disguise the nature, the location, the source, the ownership, or

the control of the $10 million or property traceable to the $10 million; (ii) concerning whether Robert Nichols or Ellen Nichols transferred portions of the $10 million in a manner suggesting that they believed that they were not bona fide purchasers for value; and (iii) concerning whether the Nichols provided value to Israel through the acquisition and delivery of the purported Federal Reserve box. The Government further requests that the Court adopt the inferences in the above captioned forfeiture action that the Nichols's use of the $10 million that they received from Israel reveals that (i) the Nichols were attempting to conceal or disguise the nature, the location, the source, the ownership, or the control of the $10 million or property traceable to the $10 million and (ii) at the time that they received the $10 million they were not bona fide purchasers for value. Bayou Management further requests that the Court instruct the ultimate finder of fact in the above captioned adversary proceeding that it may draw the inference from the Nichols's failure to produce these documents that the Nichols did not take the $10 million from Israel in good faith and did not provide reasonably equivalent value for the $10 million.

Should the Court feel that a conference would be helpful in determining the appropriate sanction for the Nichols's failure to comply with the Court's order, the Government and counsel to Bayou Management jointly request that the conference be scheduled for the first week in December.

          Respectfully submitted,

          MICHAEL J. GARCIA
          United States Attorney
          Southern District of New York

By: *[signature]*

          Jeff Alberts
          Sharon Cohen Levin
          Margery Feinzig
          Assistant United States Attorneys
          Tel. (212) 637-1038

Attachments

cc by fax:

J. Joseph Bainton, Esq (Counsel for Petitioners)
Gary J. Mennitt, Esq. (Counsel for Bayou Management LLC)
Jonathan D. Perry, Esq. (Counsel for Bayou Management LLC)