UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States of America

v.                                                                                          05 CR1039 (CM)

Samuel Israel III
        Prisoner No. 84430-054
        Butner FCI Greenville A Unit

**MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE
BY A PERSON IN FEDERAL CUSTODY**
(Motion Under 28 U.S.C. §2255)

_____

MOTION

1. (a) Name and location of court that entered the judgment of the conviction you are

    challenging:

    United States District Court
    Southern District of New York
    Daniel Patrick Moynihan United States Courthouse
    500 Pearl Street
    New York, NY 10007-1312

    (b) Criminal docket or case number:

    Case #: 1:05-cr-01039-CM-1


2. (a) Date of the judgment of conviction:

    September 29, 2005


    (b) Date of sentencing:

    April 14, 2008

1

3. Length of sentence:

    240 (two hundred forty) months

4. Nature of crime (all counts)

    Count 1: Conspiracy to commit investment advisor fraud in violation of

    18 U.S.C. §371.

    Count 2: Investment advisor fraud, in violation of 15 U.S.C. §§80b-6, 80b-17.

    Count 3: Mail fraud, in violation of 18 U.S.C. §1341.

5. (a) What was your plea?
    (1) Not guilty [ ]    (2) Guilty [ X ]

    (3) Nolo contender (no contest) [ ]

    (b) If you entered a plea to one count or indictment, and not a guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to? N/A

6. If you went to trial, what kind of trial did you have?

    Jury [ ]  Judge only [ ]  N/A

7. Did you testify at a pretrial hearing, trial or post-trial hearing? Yes [ ] No [ X ]

8. Did you appeal from the judgment of conviction?  Yes [ X ]   No [ ]

9. If you did appeal, answer the following:
    (a) Name of court:  United States Court of Appeals for the Second Circuit

    (b) Docket or case number: 08-1972-cr

    (c) Result:  Affirmed

    (d) Date of result:  June 19, 2009

    (e) Citation to the case:  Unpublished; no citation.

    (f) Grounds raised:  Twenty year sentence excessive in the circumstances of:

Petitioner's painful and degenerative medical conditions and his diminished life expectancy; the length of sentence is excessive given petitioner's cooperation with law enforcement agencies, and judicial error in refusing recusal.

(g) Did you file a petition for certiorari in the United States Supreme Court?

Yes [ ]   No [ X ]

If "Yes" answer the following:

(1) Docket or case number:

(2) Result:

(3) Date of result:

(4) Citation to the case:

(5) Grounds raised:

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions or applications concerning this judgment of conviction in any court?

Yes [ ]   No [ X ]

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court:

(2) Docket or case number:

(3) Date of filing:

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition or application?   Yes [ ]   No [ ]

      (7) Result:

      (8) Date of result:

 (b) If you filed any second motion, petition, or application, give the same information:

      (1) Name of court:

      (2) Docket or case number:

      (3) Date of filing:

      (4) Nature of the proceeding:

      (5) Grounds raised:

      (6) Did you receive a hearing where evidence was given on your motion, petition or application?   Yes [ ]   No [ ]

      (7) Result:

      (8) Date of result:

 (c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

      (1) First petition:     Yes [ ]  No [ ]

      (2) Second Petition   Yes [ ]  No [ ]

 (d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

   Petitioner was informed that further appellate efforts at the time would be futile.

12. For this motion state every ground on which you claim that you are being held in violation of the Constitution, laws or treaties of the United States. Attach

additional pages if you have more than four grounds.  State the facts supporting each ground.

On behalf of and in close cooperation with Samuel Israel III, Inmate No. 84430-054, presently housed at LSCI Butner, in Butner, North Carolina, undersigned Counsel now makes the following factual assertions, to wit:

**GROUND ONE: TIMELINESS OF PETITION**

Petitioner asserts this Motion to Vacate, Set Aside, or Correct Sentence is timely because of a fundamental change in circumstances affecting the underlying facts and assertions by the Federal Bureau of Prisons and other United States Justice Department officials which were relied upon and antecedent to this Honorable Court's determination of an appropriate and carefully tailored sentence in this case.  Specifically, when this Court rendered its sentence, it took cognizance of the assurances by the Federal Bureau of Prisons that it could properly and humanely care for Petitioner's numerous medical conditions, including, but not limited to, sick sinus syndrome, degenerative spinal disease, opioid dependence, and depression.  At the commencement of Petitioner's incarceration, the federal government was able to provide institutionally adequate and reasonably acceptable medical care to him.  Unfortunately, since the date of sentencing the economic and fiscal hardship in the United States has worsened and has led to a new age of austerity in budgeting.  Coupled with prison overcrowding, there is now more stress than ever on the ability of the Federal Bureau of Prisons to care for inmates with chronic and severe medical conditions.  The Petitioner falls into the category of inmates suffering from chronic conditions.

The most glaring example of how the prison system can no longer take care of Petitioner's specific chronic medical needs, thereby undermining the rationale for this Honorable Court's sentence, involves the medical negligence and gross incompetence of Federal Bureau of Prison personnel in the care and treatment of Petitioner during 2013. The conditions complained of are not only severe and shocking to the conscience but are of a continuing and escalating nature. In the late Spring and early Summer of 2013, the LSCI Butner medical staff allowed Petitioner's pacemaker battery to die. The pacemaker itself had been installed prior to Petitioner's incarceration in order to regulate his heartbeat as a treatment of sick sinus syndrome, a condition whereby the heart's sinus node does not work properly, causing arrhythmia and bradycardia. This means that at times Petitioner's heart does not pump enough blood to fully oxygenate his body.

The Federal Bureau of Prisons knew for some time that the battery needed to be replaced and simply failed to do so in a timely manner. It was only after Petitioner lost consciousness, fell, and hit his head in the Spring of 2013, that the medical staff decided they needed to replace his pacemaker battery. He was taken then for surgery at the University of North Carolina Medical Center, where his chest was opened, and the battery was replaced. For whatever reason, Petitioner was not allowed proper convalescence after the procedure and was not properly monitored by LSCI Butner medical staff. In fact, Petitioner was seen by a doctor three times and no attempt was made to remove his sutures. The on-site nurses even informed the doctors that the sutures needed to be removed to no avail. In the septic environment of general population, Petitioner's sutures became infected. Petitioner became terribly ill as a result

of a thoracic infection and was admitted to the ICU at UNC Medical Center.  Indeed, Petitioner almost died.

The near death experience of Petitioner forms a new factual predicate proving that the Federal Bureau of Prisons cannot adhere to the level of care which they previously assured this Honorable Court they could provide.  Since this Court relied upon the assurances of the government that it could adequately and humanely care for Petitioner in rendering its sentence; and since facts now show that the government cannot in fact do so; it is respectfully asserted that Petitioner must be resentenced.

### GROUND TWO:  PETITIONER'S CARDIAC CONDITION HAS BEEN COMPROMISED BY BEAUCRATIC FIAT

Presently, Petitioner has no pacemaker to regulate and treat his sick sinus syndrome.  Petitioner's pacemaker was removed on May 21, 2013, at the University of North Carolina Medical Center because it was infected.  Worst still, an old lead from the prior pacemaker remains imbedded in Petitioner's heart providing an omnipresent risk of renewed infection.  On current information and belief, the Federal Bureau of Prisons in conjunction with its contractor UNC Medical Center, has employed an experimental device, whose purpose while nominally diagnostic, seems more geared towards cost savings than properly monitoring and treating the medical condition of inmates like Petitioner.  The suspect data received from this experimental device has been used as a pre-textual justification for the Federal Bureau of Prisons ignoring Petitioner's cardiac condition.

Without his pacemaker, Petitioner has no effective means to regulate his irregular heart rhythm.  Indeed, Petitioner must sometimes jump up and down to elevate his heart

rate so that he will not lose consciousness, an eventuality which, in the context of prison, can be threatening to life and limb in more than one way. Petitioner and his family live in constant fear of a cardiac event which could end his life. Failure to treat Petitioner's heart condition in an appropriate medical fashion is cruel and inhumane and contrary to the high standards which any civilized society should adhere to in the incarceration of prisoners. The bureaucratic trivialization of the cardiac issue by the government further underscores the annulment of antecedent facts relied upon by this Honorable Court when rendering its prior sentence.

### GROUND THREE: PETITIONER'S PAIN MANAGEMENT REGIME HAS BEEN ARBITRARILY AND CAPRICIOUSLY TERMINATED

Upon entering prison, Petitioner suffered from chronic pain due to a degenerative spinal condition whereby his spinal column narrows and impinges on the nerves and spinal cord. The nature of this condition is such that it will either be maintained or worsen without periodic surgical amelioration. Petitioner managed his pain prior to his incarceration with opioids and as such has become dependent upon them.

A major consideration in this Honorable Court's sentencing was the assertion by the government that the Federal Bureau of Prisons would be able to maintain a comparable regime of pain management and treatment of accompanying opioid dependency. Prior to release from the ICU, Petitioner received some semblance of humane pain management treatment. This treatment included methadone and a fentanyl patch for delayed delivery of pain medication. Additionally, Petitioner was given a special pillow and other orthopedic devices to further aid in pain relief. For reasons which Petitioner suspects are spurious, ad hoc, and after the fact, LSCI Butner's medical

staff has now arbitrarily, capriciously, and perhaps maliciously, eliminated Petitioner's established and effective pain management regime.

Here too, the elimination of proven and effective pain management and treatment for opioid dependency, without a comparable replacement, has rendered Petitioner completely debilitated and emotionally devastated.  Petitioner has a documented history of depression.  Suicidal ideation is common with depression and indeed within the time period of his incarceration, petitioner has expressed, at one time or another, a sense of hopelessness and an inability to continue on due to the excruciating pain he feels.  Presumably, this was not this Honorable Court's imagined outcome when it sentenced petitioner.

### GROUND FOUR:  THE SYSTEMATIC AND ESCALATING PATTERN OF ABUSE AND NEGLECT IS TANTAMOUNT TO TORTURE

Taken as a whole, the government's actions in the aftermath of Petitioner's near death experience in May 2013 raise the specter of malicious and retaliatory intent.  The degenerative spinal condition which causes Petitioner chronic pain has not magically been cured.  One is left to wonder what rational medical basis LSCI Butner's medical staff can truly proffer to justify this systematic denial of the pain management regime that has heretofore proven effective for Petitioner.  Moreover, without his pain management and in the light of the psychological dementia likely to arise from opioid deprivation and acute, chronic pain; one can see a callous disregard for human dignity.

Injury, pain, anxiety, and negligence have influenced Petitioner to rash acts of desperation which in turn have led to subsequent institutional retaliation and deprivation.

For instance, shortly after returning from the ICU, Petitioner began to experience chest pain, which he believed either attributable to another infection or a cardiac event. In desperation he scraped off his fentanyl patch and ingested it in an effort to gain some modicum of relief from the pain he was experiencing and to stop any potential cardiac event. Petitioner asserts that the medical staff was not available that night. He was in fear of his life if he did not take action on his own behalf. As a result of this isolated desperate act, LSCI Butner's medical staff decided to discontinue Petitioner's pain management regime. The decision was made to lower the dosage, in a short, unrealistic, and ultimately inhumane, period of time, thereby resulting in heightened pain, anxiety, and erratic behavior. Petitioner's methadone was also discontinued. As supposedly trained medical professionals, LSCI Butner's medical staff knew or should have known that these two events, taken together, on the heels of a life threatening event, brought on by their negligence, would produce in Petitioner a heightened state of anxiety, erratic behavior, and poor decision making.

It was at this time, that this imminently foreseeable eventuality was used as a pretext by LSCI Butner medical staff for removing Petitioner from the general population and placing him the Special Housing Unit. Petitioner remained in the Special Housing Unit for over 100 days contrary to BOP Policy. There is increasing scholarship indicating that isolation of over 15 days causes irreparable damage to an isolated individual's psyche. In Petitioner's case, he was placed in the Special Housing Unit without his special medical devices, without his carry medications, and regular pain management regime. To make matters worse, the confined space of the SHU, the paltry excuse for bedding, and the extremely limited time for exercise and sunshine, all

conspired to further undermine Petitioner's mental and physical well being. The pain was so bad that Petitioner could not sleep. He would often pass out from exhaustion. All of his complaints and requests for a restoration for a pain management regime were rejected.

Like a cat with a mouse, LSCI Butner's staff has batted Petitioner around chemically and psychologically. To further illustrate the arbitrary nature of the LSCI Butner medical staff, Petitioner's fentanyl patch was restarted on a much lower dose two months after the initial withdrawal. Then a month later, the LSCI Butner medical staff decided to discontinue Petitioner's fentanyl and methadone again. Petitioner currently has no effective pain management. Additionally, after undersigned Counsel became actively involved in assisting Petitioner in the reestablishment of his prior pain management regime, harassment seemed to continue. Indeed, on Christmas Eve, Petitioner was placed in the Special Housing Unit yet again for pre-textual reasons. The seesaw effect only serves to undermine the mental stability of Petitioner.

Dr. Carol Weiss, M.D., a prominent addiction psychiatrist with great expertise in pain management and clinical experience specifically with Mr. Israel's unique medical situation states that "it is inhumane and medically irrational to deprive Mr. Israel of opioids for his chronic pain condition;…non-opioid pain medications…do not adequately manage his pain." (Exhibit 1, p. 1). Moreover, Dr. Weiss states that: "Mr. Israel has demonstrated behavioral disturbances that have resulted in his placement in the SHU, where the conditions significantly exacerbate his physical discomfort. This set of circumstances strikes me as exquisitely irrational and sadistic. Behavior disturbances such as irritability, agitation, anxiety and depression are the expected behavioral outcome

of opioid discontinuation in someone who has been stably maintained on opioids for over 11 years. There is abundant medical literature to support the concept that endogenous opioid production is permanently and irretrievable suppressed after just 7 years of opioid maintenance." (Exhibit 1, p. 2).

As indicated in the amended opinion of actuarial experts Anna Hart and Rick Bergstrom, attached hereto as Exhibit 2, the Petitioner's "overall health deterioration in 2013 has resulted in remarkable and dramatic decline in both his mental and physical condition" (Exhibit 2, p.15). In 2008, when these same consultants issued their original life expectancy opinion for this Honorable Court, they gave the Petitioner a life expectancy of 23 to 24 years (Exhibit 2, p.5). After nine months of medical malpractice, ineffective pain management, and bureaucratic retaliation the Petitioner's life expectancy has declined to 19.4 years, a full three years of lost years (Exhibit 2, p.15). That amounts to a loss of one month for every three he has been incarcerated since the circumstances changed. Surely, this Honorable Court did not intend for the Petitioner to be systematically subjected to such coercive physical and mental attrition when it rendered its sentence.

The synergy of medical abuse, pain, isolation, and atmosphere of threat combine to usurp this Court's original evaluations and sentence. In its place the Federal Bureau of Prisons has substituted a bureaucratically imposed sentence which is cruel, debilitating, and life threatening. In effect, the present state of affairs at LSCI Butner has converted this Honorable Court's lawful and well considered sentence into a *de facto* life sentence since it is highly likely that the Petitioner will not psychologically and physically survive the current abuse and neglect. Indeed, one is left to wonder if this is not in fact a

constructive extra-juridical execution in an effort to launder the government's medical malpractice.

    12. (b) Direct Appeal of Grounds One, Two, Three, and Four:

        (1) If you appealed from the judgment of conviction, did you raise this issue? Yes [ ] No [ X ]

        (2) If you did not raise this issue in your direct appeal explain why:

        NOT RIPE

    (c) Post-Conviction Proceedings:

        (1) Did you raise this issue in any post-conviction motion, petition, or application? Yes [ ] No [ X ]

        (2) If your answer to Questions (c)(1) is "Yes", state: N/A

            Type of motion or petition:

            Name and location of the court where the motion or petition was filed:

            Docket or case number (if you know):

            Date of the court's decision:

            Result (attach a copy of the court's opinion or order, if available):

        (3) Did you receive a hearing on your motion, petition, or application? N/A Yes [ ] No [ ]

        (4) Did you appeal from the denial of your motion, petition, or application? N/A Yes [ ] No [ ]

        (5) If your answer to Question (c)(4) is "Yes", did you raise this issue in the appeal? N/A Yes [ ] No [ ]

      (6) If your answer to Question (c)(4) is "Yes," state:

          Name and location of the court where the appeal was filed:

          Docket or case number:

          Date of the court's decision:

          Result (attach a copy of the court's opinion or order, if available):

      (7) If your answer to Question (c)(4) or Question (c)(5) is "No", explain why you did not appeal or raise this issue:

      N/A, Not Ripe

13. Is there any ground in this motion that you have not previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

    Grounds One through Four are asserted to be new facts supporting the claims presented pursuant to 28 USCA §2255(f)(4)

14. Do you have any motion, petition, or appeal now pending (filed and not decided yet) in any court for the judgment you are challenging? Yes [ ]  No [ X ]

    If "Yes" state the name and location of the court, the docket or case number, the type of proceeding and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

    All Grounds asserted herein consist of new facts; however, at all prior stages of the proceedings in this case the Petitioner was represented by: Barbara L. Trencher, Esq. & Barry A. Bohrer, Esq., MORVILLO, ABRAMOWITZ,

GRAND, IASON, ANGELLO, & BOHRER, P.C., 565 Fifth Avenue, New York, New York 10017.

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?  Yes [ ]  No [ X ]

    Petitioner was sentenced based upon Bill of Information containing multiple counts, *supra* at item 4.

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?  Yes [ ]  No [ X ]

    (a) If so, give name and location of court that imposed the other sentence you will serve in the future:

    (b) Give the date the other sentence was imposed:

    (c) Give the length of the other sentence:

    (d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?  Yes [ ]  No [ x ]

    NOTE: Petitioner was given an enhanced sentence of two years for failure to report to prison on time.

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. §2255 does not bar your motion.[1]

---

[1] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. §2255, paragraph 6, provides in part that:
    A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
        (1) The date on which the judgment of conviction became final;
        (2) The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United

See Ground One, *supra* at item 12; and attached Memorandum of Law filed in

support hereof.

---

    States is removed, if the movant was prevented from making such a motion by such governmental action.
(3) The date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) The date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief:

Wherefore, Petitioner respectfully prays that this Honorable Court will vacate, amend, or set aside his prior sentence and reconsider same in light of the new facts herein asserted, and that after holding an evidentiary hearing; that a new sentence with a greater downward departure from the Federal Sentencing Guidelines will be ordered, or any other relief to which movant may be entitled.

        /s/Shane P. Landry
        Shane P. Landry, Esq.
        LSBAN 26580
        Counsel for Samuel Israel III
        P.O. Box 3326
        St. Francisville, LA 70775
        (225) 635-2728
        shanelandrywf@hushmail.com

I declare under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C.A. §2255 was filed electronically on this 7th day of May 2014.

Executed on this 7th day of May 2014.

        /s/Shane P. Landry
        Shane P. Landry, Esq.
        LSBAN 26580
        Counsel for Samuel Israel III