UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States of America

v.                                                                                          05 CR1039 (CM)

Samuel Israel III
      Prisoner No. 84430-054
      Butner FCI Greenville A Unit

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE
BY A PERSON IN FEDERAL CUSTODY**
(Motion Under 28 U.S.C. §2255)

---

Shane P. Landry, Esq.
Counsel for Samuel Israel III
LSBAN #26580
P.O. Box 3326
St. Francisville, LA 70775
(225) 635-2728
shanelandrywf@hushmail.com

# TABLE OF CONTENTS

**TABLE OF CASES**                                                    **3**

**INTRODUCTION**                                                      **4**

**STATEMENT OF FACTS**                                                **5**

**LEGAL ARGUMENT**                                                    **7**

**CONCLUSION**                                                        **9**

## TABLE OF CASES

**Cases**
*Locasio v. U.S.*, 395 F. 3d 51, 55 (2d Cir. 2005) .......................................................................... 7
*Wims v. U.S.*, 225 F. 3d 186, 190 (2d Cir. 2000). ......................................................................... 8

## INTRODUCTION

Petitioner now comes through undersigned Counsel and hereby moves for an Order to Vacate, Set Aside, or Correct the Sentence rendered by this Honorable Court on April 14, 2008 in the above captioned matter.  This matter previously came before this court under Bill of Information charging Petitioner with (1) conspiracy to commit investor advisor fraud, in violation of 18 U.S.C. §371; (2) investor advisor fraud, in violation of 15 U.S.C. §80b-6, §80b6-17; and (3) mail fraud, in violation of 18 U.S.C. §1341.  After pleading guilty, Petitioner was sentenced to 20 years incarceration, 3 years supervised release, $300 million in restitution and a mandatory special assessment of $300.  A key aspect in this Honorable Court's decision in the appropriateness of its individualized sentence was assurances by the United States Justice Department, Federal Bureau of Prisons, that it would be able to adequately treat the well documented medical conditions of the Petitioner in an adequate and humane fashion.  After the unfortunate and foolish failure of the Petitioner to report to prison, an extra two years were added to his sentence.

From 2008 through 2012, the Federal Bureau of Prisons seemed to be able to provide Petitioner with adequate and institutionally appropriate medical care.  However, beginning in 2013, this all changed.  Either because of malicious intent or merely gross negligence, Petitioner almost died in May 2013 due to the poor treatment he received at LSCI Butner.  It is asserted that the gross medical malpractice, coupled with subsequent retaliatory actions, which have further exacerbated the medical condition of the Petitioner, constitute a new cluster of facts, the knowledge of which seems to annul the very rationale this court relied upon in rendering its sentence.  Moreover, the fact that the Federal Bureau of Prisons cannot effectively treat and manage Petitioner's health issues, is a fact which was unknowable at the time of sentencing.

Petitioner maintains that no amount of due diligence could have uncovered the inability of the Federal Bureau of Prisons to care for Petitioner's medical conditions at the time the sentence was rendered. These new facts which have arisen have undermined this Honorable Court's decision. Accordingly, the Petitioner respectfully moves this Court for an Order to vacate, set aside, or correct his sentence to account for this new and disturbing information. Petitioner respectfully asserts that an equitable sentence under the circumstances would be time served plus some period of supervised release.

## STATEMENT OF FACTS

Prior to his incarceration, Petitioner was diagnosed with sick sinus syndrome, a cardiac disorder that causes the heart to beat dangerously slow. His cardiologist inserted an artificial permanent pacemaker to keep the heart beating at an appropriate rate. Further, Petitioner was also diagnosed with degenerative disc disease, an herniated disc, spondylosis, and spinal stenosis, for which he had undergone numerous surgeries. As a result of his surgeries and ongoing spinal conditions, Petitioner suffers from chronic pain and opioid dependency.

The Federal Bureau of Prisons, despite knowledge of Petitioner's dead pacemaker battery, did not schedule the pacemaker generator change until after Petitioner passed out and hit his head on April 17, 2013. Petitioner was taken off site to the University of North Carolina Medical Center on April 19, 2013 for the pacemaker generator change. Petitioner returned to LSCI Butner the same day. Petitioner's sutures were not removed from the pacemaker site and Petitioner developed an infection. By May 18, 2013, Petitioner was gravely ill from the infection and was transferred to Granville Medical Center for emergency care. Petitioner was then transferred and admitted to the ICU at the University of North Carolina Medical Center. A CT scan showed evidence of a large pocket of fluid around the pacemaker. Physicians at the

5

University of North Carolina Medical Center decided to remove the pacemaker on May 21, 2013.  However, the surgeon was unable to remove the right atrial lead.  Petitioner was discharged and returned to LSCI Butner on May 28, 2013.

Upon returning to the prison, Petitioner reported a high amount of pain at the pacemaker site, as well as generalized pain from being jostled in the ambulance.  Petitioner continued to experience high levels of pain generally, along with chest specific pain.  As a result, on or around June 3, 2013, Petitioner scraped off his prescribed fentanyl patch and ate it.  Because of Petitioner's isolated act of desperation, the medical staff at LSCI Butner decided to begin tapering Petitioner off of his pain management, consisting of a fentanyl patch and methadone.  By August 2013, Petitioner was completely taken off the fentanyl patch.  However, due to Petitioner's constant complaints of pain and inability to sleep, LSCI Butner medical officials decided to restart Petitioner on a low dose of the fentanyl patch.  On August 28, 2013, the Pain Management Committee at LSCI Butner met and again decided to taper Petitioner off of the fentanyl patch and the methadone.  After this date, Petitioner asked the Pain Management Committee, as well as individual medical professionals, at LSCI Butner to reconsider their decision regarding his pain management.  Petitioner continued to report ongoing chronic pain that affected his ability to sleep, exercise, and normally function throughout the day.  Since that time the medical staff at LSCI Butner has refused to listen to Petitioner's claims and continued to disallow his use of opioids or other effective pain management.  Further, Petitioner is currently without a pacemaker.

On or about August 19, 2013, Petitioner was placed in the Special Housing Unit at LSCI Butner for consuming his fentanyl patch in early June 2013.  Petitioner was kept in the Special Housing Unit for this incident for approximately 100 days.  While in the SHU, Petitioner was

denied his carry medications, his special orthopedic devices, and his exercise equipment.  He was made to sleep on a very thin mattress, which aggravated his back, and was confined in a 12' x 6' space, with only one hour a day of external activity and exposure to natural sunlight.  Without his pain management, Petitioner found himself in a constant state of debilitating and excruciating pain.  Not only did this pain constantly wear on his mind, but his body's inability to produce natural opioids after years of taking prescribed artificial opioids is comprised.  This in turn has exacerbated his depression and anxiety.

Petitioner was again placed in the Special Housing Unit on December 24, 2013.  LSCI Butner claims that Petitioner was merely under investigation. No further reasons or investigations occurred regarding this placement.  Petitioner was released from the SHU without hearing or any other of modicum of process in mid January 2014.  Prior to his near death experience, Petitioner was, for the most part, an ideal prisoner with no disciplinary issues or problems with staff.

**LEGAL ARGUMENT**

Under 28 U.S.C. §2255, a prisoner in federal prison may collaterally challenge his federal conviction or sentence.   Section 2255 provides that: [a] 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of—(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.  *Locasio v. U.S.*, 395 F. 3d 51, 55 (2d Cir. 2005).  "Subsection (4) does not require the maximum feasible diligence, only 'due,' or reasonable, diligence." *Id*.  Further, Subsection (4) is not a tolling provision that extends the length of the available filing time by excluding certain periods that post-date the start of the limitations clock from the calculation of how much time has run.  Rather, it resets the limitation period's beginning date, moving it from

the time when the conviction became final under Subsection (1), to the later date on which the particular claim accrued. *Wims v. U.S.*, 225 F. 3d 186, 190 (2d Cir. 2000). Therefore, the requirements of Subsection (4) require the discovery of new facts and the date upon which the limitations clock began to tick is a fact-specific issue. *Id*. Petitioner hereby invokes this factual predicate exception.

In this particular case, this Honorable Court took cognizance of the extensive array of medical problems faced by the Petitioner prior to his incarceration. This Honorable Court noted the Petitioner would require an extraordinary amount of medical attention while under the care and custody of the Federal Bureau of Prisons. This Court then made a downward departure from the sentencing guidelines and issued Petitioner a 20 year sentence. The sentence was rendered in large part based upon the submitted affidavits of the Petitioner, as well as the assurances by the Federal Bureau of Prisons that it could in fact adequately treat the medical conditions of the Petitioner. As pointed out in Petitioner's Motion to Vacate, Set Aside or Correct Sentence, filed contemporaneously with this Memorandum of Law in support thereof, the recent actions of the Federal Bureau of Prisons beginning in May 2013 have negated the antecedent of this Honorable Court's rationale by rendering it nugatory. Undersigned Counsel hereby asserts that the "factual predicate" for purposes of triggering the statute of limitations under §2255(4), is the date upon which Petitioner entered the hospital for treatment of his severe thoracic infection. This event demonstrates beyond all doubt that the Federal Bureau of Prisons cannot in fact provide Petitioner with adequate treatment or effective pain management.

The simple that fact is that the Federal Bureau of Prisons has demonstrated that its assurances to this Honorable Court have been superseded by new facts. The Federal Bureau of Prison's prior assertions that it would be able to effectively treat and manage Petitioner's health

issues presumably formed an integral basis of this Honorable Court's decision. No amount of due diligence could have discovered this fundamental change in circumstances which seems to be an odd mixture of systemic and interpersonal factors. Petitioner has in fact engaged the internal and administrative grievance process continuously within the Federal Bureau of Prisons to no effect. Since the Court's rationale is now negated, equity and fundamental fairness, as well as the dignity of this Honorable Court, militate in favor of a review of prior sentence and an order commanding a further downward departure of the sentence previously imposed.

## CONCLUSION

In sum, Petitioner respectfully prays that this Honorable Court will recognize the new circumstances that have arisen since the date of the original sentence and take cognizance of the fact that Petitioner has brought his motion in a timely fashion. Petitioner further prays that this Court will recognize that he has diligently attempted to ameliorate, through administrative procedures, his present state of neglect and abuse to no avail. Presumably, the assurances of the Federal Bureau of Prisons that they could adequately and humanely care for Petitioner's unique medical conditions was an important and essential fact considered by this Honorable Court when rendering its individualized sentence, which encompassed a downward departure from the sentencing guidelines. Since the recent change of circumstances have rendered those assurances null and void, the prior judgment of this Court cries out for reevaluation. To that end, Petitioner respectfully asserts that a *de novo* review of the Federal Bureau of Prison's ability to treat and manage his health and well-being is merited. It is respectfully submitted that, upon reviewing the new facts of this case, this Court will find that there is sufficient evidence to justify further downward departure in Petitioner's sentence. Petitioner asserts that his sentence should be reduced to time served with some reasonable period of supervised release.

Respectfully submitted,

/s/Shane P. Landry
Shane P. Landry, Esq.
LSBAN 26580
Counsel for Samuel Israel III
P.O. Box 3326
St. Francisville, LA 70775
(225) 635-2728
shanelandrywf@hushmail.com