UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x

UNITED STATES OF AMERICA

        V.                                                           05 CR 1039 (CM)

SAMUEL ISRAEL, III,

        Defendant.
----------------------------------------x

## DECISION AND ORDER DENYING DEFERNDANT'S MOTION FOR COMPASSIONATE RELEASE

McMahon, C.J.:

    Samuel Israel has served 11 years of a 22-year sentence for conspiring to commit wire and financial advisor fraud involving hundreds of millions of dollars in loss and for failing to report to serve his sentence. He is serving his sentence at the Low Security Facility at Butner, North Carolina. His current projected release date is May 10, 2027.

    Before the Court is Israel's third request for compassionate release, submitted June 29, 2020.

### Procedural History of Israel's Motions for Compassionate Release

*Israel's Prior Request for Compassionate Release in the District Court*

    On May 18, 2019, prior to the advent of the COVID-19 pandemic, Israel submitted a motion for compassionate release based on his poor health. The medical conditions upon

1

which Israel based his previous requests were, in sum, that he was a paraplegic who had also lost much of the use of his right arm. He had lost all feeling in his lower extremities. He had to catheterize himself and manually dis-impact his bowel. He had long-standing heart disease and had a pacemaker. He suffered from chronic infections, including MRSA, and chronic pain. He was also subject to the chronic use of antibiotics to control infections. (May 2019 Mot. 7-11, 14-16).

On December 4, 2019, the Court issued an order denying Israel's motion, finding that his medical conditions did not qualify him for a reduction and that, given the seriousness of Israel's crimes, reducing his sentence to time served would undermine the goals of sentencing set forth in 18 U.S.C. §§ 3582(c)(1)(A) and 3553(a).

On December 11, 2019, Israel filed a notice of appeal challenging the Court's denial of his motion for a reduction in sentence. (Dkt. No. 215).

On April 16, 2020, prior to either side filing briefs in the Second Circuit, Israel filed a motion for reconsideration in this Court, based on Israel's continued ill health and his heightened risk of death from COVID-19.[1]

On May 4, 2020, the Court issued an order denying Israel's April 2020 Motion, finding that the Court lacked jurisdiction over the motion due to the pendency of Israel's

---

[1] On April 17, 2020, Israel filed a motion in the Second Circuit requesting that his appeal be held in abeyance. (Dkt. No. 28). On April 26, 2020, the Government filed an opposition to that motion. (Dkt. No. 30). On April 29, 2020, the Second Circuit denied Israel's motion to hold his appeal in abeyance. (Dkt. No. 34). On May 21, 2020, Israel filed a motion to withdraw his appeal and on May 26, 2020, the Second Circuit granted that motion. (Dkt. Nos. 40, 48).

appeal. (Dkt. #218 at 1). The Court also indicated that it was not inclined to grant the motion if the Second Circuit remanded the case to it because Israel had not exhausted his administrative remedies. (Dkt. #218 at 1-2). The Court noted that it has repeatedly indicated that "only if the BoP could not care for defendant would I consider a compassionate release motion – one that I am not otherwise inclined to grant, given the nature, duration and magnitude of Israel's crimes. In the absence of input from the Bureau about its ability to care for Israel during the COVID pandemic, I am not inclined to change my mind and grant a motion by a wealthy white collar criminal, who has a significant portion of his sentence left to serve, for compassionate release as long as the BoP has the ability to care for him." (Dkt. No. 218 at 1-2). The Court further advised that "Israel should file his application for compassionate release where it belongs: with the Bureau of Prisons. Until he exhausts, he raises no substantial issue." (Dkt. No. 218 at 1-2).

*Israel's Request to the BOP for Compassionate Release*

On or about April 24, 2020 and April 26, 2020, Israel submitted requests to the BOP for a reduction in sentence, indicating that he met the qualifications of having a debilitated medical condition and of being elderly with medical conditions. He also indicated he was at risk of contracting COVID-19. *See,* 4/24/20 and 4/26/20 Requests.

On or about April 29, 2020, Israel's attorney sent a letter to the Warden of Butner Correctional Complex requesting a modification of sentence. He argued that Israel had serious and debilitating medical conditions and that those conditions also made it more likely that he would contract COVID-19 and that he would not survive if he were to contract

3

COVID-19. He noted that a March 26, 2020 Memorandum of Attorney General William Barr directed the BOP to consider the totality of the circumstances for each inmate along with a list of discretionary factors the BOP should consider when recommending which inmates should be transferred to home confinement. And, he argued that these factors -- including Israel's age and vulnerability to COVID-19, the fact that he was at a low security facility, was non-violent, was convicted of a non-violent offense, had no history of violence or sex offenses, was a U.S. citizen, had a low PATTERN category, had an appropriate release plan and was neither a flight risk nor a danger to the community -- supported a reduced sentence. *See*, 4/29/20 Letter.

On or about April 30, 2020, the Warden of Butner Low issued a memorandum denying counsel's April 29, 2020 request and indicating the denial was based on Israel's not meeting the criteria for "medical conditions under debilitated medical condition, elderly with medical conditions, or terminal medical conditions." The memorandum also addressed the threat of contracting COVID-19, indicating it was taking "extraordinary measures to contain the spread" of the virus and "treat any affected inmates." It also advised that "[w]e recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, unless you meet current RIS criteria, your concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence." *See,* 4/30/20 Warden Memorandum.

4

On or about May 6, 2020, Israel submitted an appeal of the Warden's decision to the BOP. *See*, 5/6/20 Appeal Form. There does not appear to have been a disposition of that appeal.

### The Present Motion for Compassionate Release

In Israel's present motion filed on June 29, he says that he had in fact contracted COVID-19. While he does not say that he has suffered from any COVID-19 symptoms, he argues that the general "symptoms of COVID-19—fever, cough, and shortness of breath—combined with Samuel's legion of medical conditions make him a prime candidate for death" and "[u]nless he is granted compassionate release, Samuel Israel will die a slow, painful, and humiliating death." (June Mot. 1). Specifically, he argues he is a "barely functioning triplegic," with a deteriorating heart condition, persistent bacterial infection and hypertension, which leaves him at COVID's mercy, which includes: (1) heart damage, (2) lung-scarring, (3) strokes, embolisms and blood clotting, and (4) neurocognitive and mental health impacts. Israel also says that since the Court's denial of his last request, he was hospitalized for 5 days for chronic urinary tract infections and an open wound on his ankle. In sum, he argues, according to the CDC, immunocompromised people like Israel are at a higher risk of death. (June 2020 Mot. 2).

Israel further argues that, as stated in his prior submissions, his medical conditions constitute a debilitated medical condition, making him eligible for a sentence reduction pursuant to 18 U.S.C. 3582(c)(1)(A), and a combination of factors outlined in Attorney General Barr's March 26, 2020 Memorandum strongly support a reduced sentence. In

5

particular, he cites the fact that he is at a low security facility, is non-violent, was convicted of a non-violent offense, has no history of violence or sex offenses, is a U.S. citizen, has a low PATTERN category, has an appropriate release plan and is neither a flight risk nor a danger to the community. He further argues that most defendants, white collar or not, have not experienced Israel's severe medical conditions, which have far exceeded that of most individuals sentenced in federal court. (June 2020 Mot. 3).

Israel also cites the BOP's report that 580 inmates and 5 staff members have tested positive at Butner Low, where Israel is housed and argues that the BOP's COVID-19 plans have failed to contain the spread of COVID-19. (June 2020 Mot. 3).[2]

Notably, Israel's latest motion makes no mention of having exhausted his administrative relief with the BOP—that is, he never asked the warden at Butner to release him now that he had actually contracted COVID-19.

The Government asks the Court to deny Israel's motion because (1) he has failed to exhaust his administrative remedies with the BOP in connection with the present motion, and (2) even if were deemed to have exhausted, he suffered no ill effects from contracting the

---

[2] An updated review of the BOP COVID-19 Dashboard reports that 599 inmates have tested positive for the virus, and that 17 inmates died from the virus. However, the Dashboard currently reflects zero inmate positive cases, and one staff positive case. While the Dashboard numbers suggest an improving situation at Butner Low, I have learned that BOP COVID-19 statistical reporting for a particular facility does not always present a clear picture of, or necessarily comport with, the actual infection rate at that facility.

virus, and therefore, the sentencing factors at 18 USC § 3553(a) still trump any argument for release.

In Israel's reply brief, counsel takes issue with the Government for its parsing of the exhaustion rules, and for downplaying future medical complications Israel might suffer now that he has contracted the virus. Counsel beseeches the Court to reject the Government's callousness and asks that the Court extend the same mercy it showed Ganeene Goode, a defendant this Court recently granted compassionate release.

This latest motion by Israel has been pending since June, owing to an expanded briefing schedule, including an extension of time granted defense counsel to file a reply brief, which was filed August 26, 2020. The Court notes that during those two-plus months there is nothing in any of the filings by the Government or defendant that suggests Israel was anything but an asymptomatic carrier of the virus.

*Law Applicable to Motions for Compassionate Release*

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. Once such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is

earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

Once a defendant has exhausted administrative remedies, with respect to the substantive determination, and in addition the statutory requirement that the Court consider the factors set forth in Section 3553(a), the United States Sentencing Guidelines contain a provision, Section 1B1.13, applicable to motions for sentencing reductions pursuant Section 3582(c)(1)(A). That section provides, in relevant part, that a reduction in sentence may be appropriate if the Court determines that--

(1)     (A) Extraordinary and compelling reasons warrant the reduction; or
(B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

    (2)     The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

    (3)     The reduction is consistent with this policy statement. U.S.S.G. § 1B1.13.

Subsection (1)(B) is inapplicable. Subsection (1)(A), which relates to "the Application Notes to Section 1B1.13, describe the circumstances under which "extraordinary and compelling reasons" exist. *See id.* § 1B1.13 comment (n.1). The only relevant provision reads as follows:

(A) Medical Condition of the Defendant—

8

    (i)      The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia

    (ii)     The defendant is—

        (I)     suffering from a serious physical or medical condition,

        (II)    suffering from a serious functional or cognitive impairment, or

        (III)   experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self- care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 comment (n.1).

As the proponent of the Motion, Israel bears the burden of proving that "extraordinary and compelling reasons" exist and that he is entitled to the relief he seeks. *See, e.g., United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

*Attorney General's COVID-19 Initiative*

On March 26, 2020, the Attorney General issued a Memorandum to the Director of the Bureau of Prisons (the March 26, 2020 Memorandum), to ensure that, in light of the COVID-19

9

pandemic, BOP utilizes home confinement, where appropriate, to protect the health and safety of BOP personnel as well as inmates in BOP's custody. *See* Office of the Attorney General, Memorandum for Director of Bureau Prisons: Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic (Mar. 26, 2020), https://www.justice.gov/file/1262731/download. In assessing whether home confinement should be granted pursuant to the March 26, 2020 Memorandum, the BOP considers the "totality of circumstances for each individual inmate, the statutory requirements for home confinement, and the following non-exhaust list of discretionary factors," including (1) the age and vulnerability of the inmate to COVID-19, in accordance with the Centers for Disease Control and Prevention (CDC) guidelines"; (2) the security level of the facility currently holding the inmate; (3) the "inmate's conduct in prison, with inmates . . . who have incurred a BOP violation within the last year not receiving priority treatment"; (4) the inmate's score under PATTERN (the "Prisoner Assessment Tool Targeting Estimated Risk and Needs"); (5) whether the inmate has a verifiable re-entry plan to prevent recidivism and maximum public safety; and (6) the inmate's crime of conviction and assessment of danger posed to the community. *See id.* at 1. In addition, before granting any inmate discretionary release, the BOP Medical Director, or someone he designates will "based on CDC guidance, make an assessment of the inmate's risk factors for severe COVID- 19 illness, risks of COVID-19 at the inmate's prison facility, as well as the risks of COVID-19 at the location in which the inmate seeks home confinement." *Id.*

On April 22, 2020, the Department of Justice issued a memorandum prioritizing for home confinement inmates who have served 50% or more of their sentences or have 18 months or less

10

remaining on their sentences and have served 25% or more of their sentences. *See United States v. Lewis Stahl*, 18 Cr. 694 (RA), Declaration of Jennifer A. Broton ¶ 19 (Dkt. No. 65-1). "[T]hese priority factors are subject to deviation in BOP's discretion in certain circumstances and are subject to revision as the situation progresses[.]" (*Id.*).

### *Israel has failed to Exhaust*

While Israel submitted a request for release to the BOP in April, that request was based on his alleged higher risk of contracting COVID-19 and likelihood of suffering life-threatening symptoms. Israel's present request is based on his having contracted COVID-19 and its effect on him. Thus, the BOP has not had the opportunity to address the effect of COVID-19 on Israel, and how that might change the BOP's ability to care for him. Accordingly, Israel has failed to exhaust his administrative remedies with the BOP; therefore, the present motion is not properly before the court.

In recent months, numerous defendants around the country have cited the unusual circumstances presented by COVID-19 as a basis for compassionate release and have argued that the exhaustion requirement should be excused. The only court of appeals to have addressed the question has rejected the argument and required exhaustion. *See United States v. Raia*, __ F.3d __, 2020 WL 1647922, at * (3d Cir. Apr. 2, 2020). In *Raia*, the Third Circuit recognized the serious concerns presented by COVID-19, but held that, in light of these concerns, as well as the BOP's statutory role and its "extensive and professional efforts to curtail the virus's spread, . . . strict compliance with Section 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id.* at *2. The vast majority of

11

district courts have also required exhaustion despite COVID-19 claims.[3] These decisions are consistent with the plain language of Section 3582(c).

To be sure, COVID-19 presents unusual circumstances, in which compassionate release decisions should be made expeditiously. But the text of Section 3582 contains no exigency exception for such circumstances, and indeed the text affirmatively refutes the availability of such an exception in two respects. First, while many statutory exhaustion provisions require exhaustion of all administrative remedies before a claim is brought in court, Section 3582 provides an alternative: exhaustion of all administrative rights *or* the lapse of 30 days from the warden's receipt of the inmate's request for compassionate release, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). This alternative suggests that the Congress recognized that even if compassionate release requests cannot always await the full administrative process to be completed, the BOP should have at least 30 days to act on such a request. Second, in cases presenting the most urgent circumstance – inmates diagnosed with a terminal illness – Section

---

3 *See United States v. Hernandez*, No. 18 Cr. 834 (PAE), 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020); *United States v. Cohen*, No. 18 Cr. 602 (WHP), 2020 WL 1428778, at *1 (S.D.N.Y. Mar. 24, 2020); *United States v. Carver*, No. 19 Cr. 6044, 2020 WL 1604968, at *1 (E.D. Wa. Apr. 1, 2020); *United States v. Clark*, No. 17 Cr. 85 (SDD), 2020 WL 1557397, at *3 (M.D. La. Apr. 1, 2020); *United States v. Williams*, No. 15 Cr. 646, 2020 WL 1506222, at *1 (D. Md. Mar. 30, 2020); *United States v. Garza*, No. 18 Cr. 1745, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020); *United States v. Zywotko*, No. 19 Cr. 113, 2020 WL 1492900, at *1 (M.D. Fla. Mar. 27, 2020); *United States v. Eberhart*, No. 13 Cr. 313 (PJH), 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); *United States v. Gileno*, No. 19 Cr. 161, 2020 WL 1307108, *3 (D. Conn. Mar. 19, 2020). *But see United States v. Perez*, No. 17 Cr. 513 (AT), 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020); *United States v. Colvin*, No. 19 Cr. 179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020). Both *Perez* and *Colvin* relied on *Washington v. Barr*, 925 F.3d 109 (2d Cir. 2019), which as discussed further below, is inapposite because it involves judge-made exhaustion doctrine.

3582(d) requires the BOP to process any application for compassionate release in 14 days. That the Congress allowed 14 days to process the claims of even a terminally ill inmate suggests that it could not have intended to allow a shorter period – which excusing exhaustion would provide – in a case, such as this, where the risk to the inmate, while serious, remains potential.

As the Third Circuit properly recognized, the mandatory exhaustion requirement accommodates the valuable role that the BOP plays in the compassionate release process. Informed decisions about compassionate release require the collection of information, like disciplinary records and medical history, that the BOP is uniquely suited to obtain and which will benefit both the BOP and later the court evaluating such claims. The BOP is also well situated to make relative judgments about the merits of compassionate release petitions—particularly at a time like this when many inmates are making petitions advancing similar claims—and adjudicate those positions in a consistent manner. The court may of course review those judgments, but the Congress expressed its clear intent that such review would come second, with the benefit of the BOP's initial assessment.

Israel's case demonstrates the virtue of requiring the BOP to first pass on an inmate's compassionate release motion. As is relevant here, the BOP is in the best position to determine whether Israel's medical condition—now that he has contracted COVID-19—has changed such that Israel "can no longer provide self-care within the environment of a correctional facility." *See id.* § 1B1.13 comment (n.1). Indeed, the Court made clear in its earlier rulings:

> As a matter of my discretion, I do not believe that Samuel Israel's sentence should be reduced, notwithstanding his compromised medical condition or the undoubted fact that he could receive better medical care in the private sector. I repeat what I said at Israel's sentencing: If the moment comes when he becomes so debilitated

13

that the Bureau of Prisons cannot care for him, I expect the Director to let me
know. Until then, in prison he stays.

(Dkt. No. 213 at 28).

*Sentencing Factors Still Counsel Against Release*

Even if the Court were to deem Israel to have exhausted his administrative remedies with the BOP, the motion would still be denied. The Court had previously found that Israel's medical conditions did not qualify him for a sentencing reduction and that, given the seriousness of Israel's crimes, reducing his sentence to time served would undermine the goals of sentencing set forth at 18 U.S.C. §§ 3582(c)(1)(A) and 3553(a), particularly, the need to impose just punishment, promote respect for the law and provide deterrence to other potential white collar criminals. (December 4, 2019 Decision, Dkt. No. 213 at 4, 23-28). There is nothing about Israel's present medical condition—which is essentially unchanged since December 2019—that alters that analysis.

Israel argues that the "symptoms of COVID-19 – fever, cough, and shortness of breath – combined with Samuel's legion of medical conditions make him a prime candidate for death" and "[u]nless he is granted compassionate release, Samuel Israel will die a slow, painful, and humiliating death." (June Mot. 1). Notably, he does not assert that he has, in fact, suffered from any COVID-19 symptoms. Indeed, Israel's medical records reflect that: Israel tested positive for COVID-19 on June 2 and from June 2 through June 24, BOP personnel provided Israel with the care he requires in connection with his chronic ailments and no symptoms for COVID-19 appear to have been reported or treated. The records describe his condition as it relates to COVID-19 as "asymptomatic." *See,* Exh. F; June 2020 Motion Exh. A.

14

To the extent Israel believes he is similarly situated to Ganneene Goode, whom this Court recently granted compassionate release, he is not. Both Israel and Goode have significant medical issues; but that is where the similarity ends. Ms. Goode has endured a life of physical trauma, mental abuse, drug addiction, and homelessness. Her involvement in the narcotics trafficking conspiracy to which she pleaded guilty was driven, to a large extent, by her desire to feed her drug habit. When the Court granted her compassionate release motion, she was wheelchair bound and suffering from end-stage medical maladies. In granting her motion, the Court reduced her sentence by less than one year.

Mr. Israel, on the other hand, was born into a prominent and wealthy family, and enjoyed all the trappings that flow from such good fortune: a sheltered upbringing, prep schools, fine colleges, and the right connections. At the time of his arrest he lived in a luxury home in Westchester, New York, his lifestyle funded with other peoples' money. While he had his own bout with drug addiction, his motivation for stealing hundreds of millions of dollars as a hedge fund manager had little to do with drug dependency, and much to do with greed.

Goode's crime was very serious, but it paled in contrast to Israel's monstrous fraud. The goals of sentencing were not offended by reducing Goode's sentence by eleven months; the same cannot be said for reducing Israel's sentence by nearly seven years.

The motion for compassionate release is denied.

Dated: September 22, 2020

*[signature]*

---

Colleen McMahon
Chief Judge

15